## In re ESTATE of WILLIS.

No. 17430. Opinion Filed Oct. 18, 1927.

Rehearing Denied Feb. 14, 1928.

(Syllabus.)

1. **Appeal and Error—Conclusiveness of Findings of Fact—Proof as to Foreign Marriage Law.**

Where the pleadings allege the law as to marriage in effect at a certain date in a foreign jurisdiction, the character of evidence required by the Oklahoma statute must be adduced to sustain such an allegation. Where it is so adduced and the trial court finds as a fact that the allegations are true, this court will not disturb same.

2. **Bastards—Construction of Legitimation Statute—Heirship—Necessity for Proof that Claimant was "Issue of Marriage Null in Law."**

Section 11303, C. O. S. 1921, is for the protection of off-spring "of a marriage contracted and consummated in accordance with the forms of the law," and which marriage for some reason is void. Neither by express language nor intendment does the statute undertake to give such an alleged marriage the status of "actual wedlock," nor to clothe a child born to a woman who had entered into such void relation with the presumption given a child born during the existence of a legal marriage. When it appears that such alleged marriage is void, it must be shown by him who claims the protection of that statute that he was born "of such marriage," and the law of probable access to the mother, controlling in cases of actual legal wedlock, has no applicaton. A judgment which shows that it rested on such presumption and probable access will not be sustained by this court.

3. **Marriage—Legality of Marriage Negatived by Final Judgment Finding Former Marriage Still in Force.**

A judgment in an heirship proceeding which finds that W. and F. married, the record showing such marriage in 1903, and further finds that it was dissolved by a valid decree of divorce in 1924, which carried an enforceable judgment as alimony, and the record showing error was prosecuted to this court by W. to reverse said decree, where it was pending when W. died in 1925, and no alleged error is prosecuted to review that part of the judgment and finding in the heirship proceeding, fixed a marital status upon W. which precluded his legal marriage to M. D. thereafter in 1924, although W. and M. D. did go through the form of a ceremonial marriage.

Error from District Court, Carter County; Asa E. Walden, Judge.

In the matter of the estate of Hickman Willis; R. S. Irby, administrator. Proceedings to determine heirship. From the judgment, Lodie Willis brings error. Affirmed in part and reversed in part.

Hatchett & Semple, for plaintiff in error.

Sigler & Jackson, J. A. Bass and Ledbetter & Ledbetter, for defendant in error Mattie Willis.

G. E. Wilson, F. M. Adams, T. B. Orr, and Lila C. Franklin, for defendant in error Lonie Scott.

Ogden & Spaulding, for defendant in error Oney Willis.

BRANSON, C. J. This is a proceeding to determine heirship and permissible as to Indians by reason of the Act of Congress of June 14, 1918 (40 Stat. L. 606). The decedent was Hickman Willis, a full-blood Indian, enrolled citizen of the Choctaw Tribe. He belonged to that class of enrolled citizens known as Mississippi Choctaws. He received an allotment of land under and

by reason of the Acts of Congress. (June 28, 1898, 30 Stat. L. 495; July 1, 1902, 32 Stat. 641). His estate was all but solely or solely revenues arising from the production of oil on the allotment. On appeal from the county court, the district court of Carter county adjudged several of the claimants to be entitled to take under the succession statutes of the state. The claimants were Lonie Scott, and alleged child; Lilly Tubby, an alleged wife; Filliah Jim, an alleged wife; Lodie Willis, and Oney Willis, alleged children, and Mattie Willis (or Dial) an alleged wife.

Error is prosecuted here solely by Lodie Willis.

The district court found against Lilly Tubby. As to her the judgment is therefore final.

The district court found that:

"Hickman Willis came to the Indian Territory * * * and was married to Filliah Jim; * * * that the marriage to Filliah Jim was under the Choctaw custom, and by members of the Choctaw Nation was considered a legal marriage, and that after said marriage the said Hickman Willis lived with and cohabited with the Filliah Jim, and held the said Filliah Jim out to the world as his wife, and that Hickman Willis and the said Filliah Jim were in fact husband and wife; * * * that Hickman Willis was by the district court of Love county divorced from Filliah Jim, and there was awarded to the said Filliah Jim the sum of ten thousand ($10,000) dollars, as alimony against Hickman Willis; * * * that Filliah Jim is entitled to receive the $10,000 awarded as alimony by virtue of the decree of divorce rendered in 1924."

The appeal from the judgment granting Filliah Jim a divorce was pending at the time of Hickman's death in 1925.

The record discloses that on the 8th day of August, 1911, Hickman Willis, the decedent, after securing a marriage license in Marshall county, Okla., went through a ceremonial marriage with one Marceline. Marceline prosecuted a suit for and secured a divorce from the decedent in 1923. Lodie, the plaintiff in error, adjudged by the district court to be a child and heir at law of the decedent, was born to the said deceased and the said Marceline, as the issue of said ceremonial marriage, prior to 1914. In 1914, the deceased, convicted of murder, was sentenced to the state penitentiary at McAlester, Okla., from which he was not released until 1922. During that time the alleged child, Oney, was born to the said Marceline.

In 1924, the said Hickman Willis secured a marriage license in Carter county and a ceremonial marriage was performed between him and Mattie Dial. At that time the appeal from the judgment granting Filliah Jim a divorce and $10,000 alimony was pending in this court. Mattie Willis (or Dial) files no petition in error here to review this part of the judgment.

No assignment of error is made against the part of the judgment finding plaintiff in error an heir. As to her, it is a finality.

Lodie, however, assigns error against Oney, Lonie Scott, and Mattie Willis (or Dial). The disposition of these assignments ends this lawsuit.

The plaintiff in error, in her brief (page 82), takes no exception to the finding that Filliah Jim and Hickman Willis were married; the only contention is that the judgment of $10,000 alimony should not have been adjudged a lien against his estate.

The record fails to disclose whether Hickman Willis was possessed of any property other than that restricted by the acts of the national Congress, the disposition of which must be with the approval of the Secretary of the Interior. If he had such other estate, such a judgment could properly be made a lien thereon. The state law cannot fix a lien which is effective to enforce any alleged rights against property subject to the control of the Department of the Interior under restrictions imposed by the national Congress as to full-blood Indians, unless the efforts of the court to administer what they believe to be justice is approved by the Department.

The record shows that the continuous legal residence of Hickman Willis was in Carter county, Okla. He brought a suit for divorce in 1911 against Filliah Jim, which he subsequently dismissed. She brought a suit against him, secured a decree of divorce and alimony in the sum of $10,000. There was nothing interposed in that suit, defensive or otherwise, that he had ever been divorced from her prior to that time. The suit he brought in 1911 for divorce against her was an admission of the existence of a marital relation. The decree rendered in favor of Filliah in the suit brought by her for divorce, from which he appealed to this court, and a judgment entered thereon that they were husband and wife at the time the decree was entered, had become a finality, the appeal abating on the death of Hickman Willis. In the instant case the district court finds that Filliah and Hickman were husband and wife. No error as to this find-

ing in the instant case is prosecuted here. So we are confronted with two judgments— one in the divorce suit brought by Filliah, finding that she and Hickman were husband and wife. The record herein discloses that that relation had existed since about 1903. Also a judgment in the instant case finds that they were legally married and were husband and wife. These judgments, which were matters of record in the district court of Carter county and Love county, strike down the strong presumption raised by the law to support the marriage of Hickman and Mattie The judgment of the trial court finding that she was his lawful wife at the time of his death is a conclusion not justified by the record. The alleged marriage to Mattie is clearly shown to have been consummated at a time when Hickman Willis was a married man. The judgment as to Mattie is reversed, set aside, and held for naught.

The judgment of the trial court finds Lonie Scott to be a child and one of the heirs. We do not feel justified in sustaining the error assigned against her.

As stated, supra, Hickman was a Mississippi Choctaw Indian. The record is not in dispute that in the year 1900, in an Indian community in Neshoba county, Miss., Hickman and one Lilly. in this record designated as Lilly Tubby, went through the form of exchange of marital consent, prevalent among the members of said tribe; that thereafter they lived together in said community until Hickman was convicted of crime and sent to the Mississippi penitentiary; that at the time he was sent to the penitentiary he was known as the husband of Lilly, and Lonie Scott was born a few weeks after Hickman was confined in the Mississippi penitentiary. It is vigorously urged that at best this so-called interchange of marital consent, under the law of the state of Mississippi, which is pleaded, would constitute only a marriage, if at all, as known at common law, and it is insisted that between the years 1892 and 1906. the so-called common-law marriage, which had by the Supreme Court of Mississippi been recognized as existing in that state prior to 1892. did not exist thereafter. and certainly not until after 1906. This by reason of a statute introduced as evidence in this case and found in the Mississippi Code of 1892, as section 2864 of said Code. It is as follows:

"A marriage shall not be contracted or solemnized unless a license therefor shall first have been duly issued and such license shall be essential to the validity of a marriage."

This statute was effective in 1900, at the time of the alleged marriage of Hickman and Lilly.

Of course the question of whether or not common-law marriage existed under the law of the state of Mississippi, being pleaded in this jurisdiction, was a question of fact to be established by evidence. It is vigorously contended in the briefs for the said Lonie Scott that the quoted statute did not abolish the common-law marriage theretofore recognized as existing by the said law of that state under its numerous decisions. This court shall not undertake to interpret a statute of the state of Mississippi. Both parties cite the case of Sims v. Sims (Miss.) 85 South. 73. Lonie Scott's counsel insisted that this case is an opinion from the Supreme Court of Mississippi which holds that common law as to marriage was in effect in Mississippi from 1892 to 1906.

It appears that the Supreme Court of Mississippi is composed of six judges. The said case of Sims v. Sims, supra, is concurred in by three judges, three judges dissenting; the court being therefore equally divided. We find this in what purports to be the opinion of the court:

"Judges Stevens, Cook, and Smith are of the opinion that the decree of the court below should be affirmed, but Judges Ethredge, Sikes. and Holden are of the opinion that it should be reversed. Consequently, because of the equal division of the judges on the question of the correctness vel non of the decree of the court below, and in obedience to the maxim. 'Semper praesumitur pronegante,' the decree of the court below must be affirmed."

It thus appears, as we conclude, that the Supreme Court of the state never decided the question, but the judgment of the trial court in that case became a finality, because the Supreme Court failed to reverse it, and the presumption of its validity was made permanent.

As we view it, the case of Sims v. Sims decides nothing instructive to this court, and under our statute providing that the law of a foreign jurisdiction which is pleaded as a fact in this state may be established by the evidence of those learned in the law. we deem that the question here is not one of interpretation of the said statute of 1892. The record shows that several members of the Supreme Court of the state, the Attorney General of the state, and many other lawyers, apparently of statewide rep-

utation, testify to the effect that an exchange or attempted exchange of marital consent such as the Indian ceremonial performance the record discloses occurred between Hickman and Lilly in 1900 constituted, under the law of Mississippi, a legal and binding marriage. We, therefore, hold that the assignment against Lonie Scott cannot be sustained.

Error is assigned to reverse the judgment as to Oney.

The finding of the district court was not to the effect that Oney was born as the issue of the ceremonial marriage entered into between Marceline and Hickman, and while they were living together as husband and wife. The finding is in haec verbis:

"I find that Oney Willis is the legal child of Hickman Willis, born in wedlock at such time as would have made it possible and probable that Hickman Willis was her father."

The question as to her is whether this finding can be justified under the record. It is to be noted that said finding is: (a) That Oney was born in wedlock, (b) at such a time as would have made it possible and probable that Hickman Willis was her father.

It is clear that the trial court indulged the presumption of legitimacy thrown around a child born in actual wedlock, and the rule is that the presumption makes such child legitimate and the heir apparent of the father if the father had access to the mother, or it was probable that he had access to the mother.

As to the first proposition, to wit, that Oney was born in wedlock, which lies at the very basis of indulging the presumption of legitimacy, we find, as pointed out, supra, that the district court had in its same judgment determined that Hickman Willis was, at the date of the ceremonial marriage to Marceline, a married man, or that was the effect of all the findings of the court. These findings being not disputed here by any assignment of error made, the said ceremonial marriage with Marceline on the date, supra, was void. Children born to Hickman and Marceline are given the status of legitimates only by reason of section 11303, C. O. S. 1921. Commenting upon this statute in the case of Copeland v. Copeland, 73 Okla. 252, 175 Pac. 764, this court said:

"Under section 8420, Revised Laws of 1910, which provides: 'The issue of all marriages null in law, or dissolved by divorce, are legitimate'—a child born of a marriage contracted and consummated in accordance with the form of the law, which for any reason (such as one of the parties having a living spouse undivorced) is invalid, is legitimate, inherits and transmits by descent as though born in lawful wedlock."

It is to be noted that the statute makes a child born of a marriage consummated in accordance with the forms of the law legitimate. The reason the rule as to the probability of the access of the father clothes the issue as legitimate is because of a valid marital relation. In all such cases the strong presumption of law is indulged in the favor of the legitimacy of a child. But the instant case proceeded on the theory that the said ceremonial marriage with Marceline was a nullity. The said Oney is not clothed with the presumption of legitimacy contended for by her counsel, but the burden was upon her to establish that she was the issue of the ceremonial marriage (although void) consummated between her mother and Hickman. That she was so born is in vigorous dispute, the mother herself not even contending that Oney was born of the marriage relation between her and Hickman.

Hickman obtained a leave of absence from the Oklahoma state penitentiary from December 22, 1918, to January 6, 1919. He had been in the penitentiary continuously from 1914 until the fall of 1918. The effort made on behalf of Oney is to show that she was clothed with the presumption of legitimacy by reason of being born in wedlock, and that it was possible and probable that Hickman Willis had access to the mother between December 22, 1918, and January 6, 1919. The record discloses that the testimony of the witnesses was taken by the county court and the issue found against Oney. On appeal to the district court the witnesses were not produced, a transcript taken before the county judge was introduced in the district court, the testimony of the mother, Marceline, not being offered by counsel for Oney. The testimony of the mother, Marceline, showed that Oney was seven years of age at the time of the hearing, which was in September, 1925. It further showed that Marceline had testified that she did not know who the father of Oney was. It further disclosed that in 1923, Marceline had filed a suit for divorce against Hickman, and in her petition had set forth that there was only one child surviving the issue of herself and Hickman, to wit, Lodie, although this petition was filed some four or five years after the alleged date of birth of Oney. That in said divorce proceedings Hickman was given the custody

of Lodie, and supported Lodie, the custody of Oney remaining with Marceline. It was on account of this situation, no doubt, that this evidence taken in the county court was not introduced on the part of Oney in the district court. And if it be taken as true that Oney was seven years of age in September, 1925, she must have been born in September, 1918, and this would strike down the contention made by her counsel that she was begotten between December 22, 1918, and January 6, 1919, and born September 11, 1919. It is admitted that Hickman could not have had access to Marceline except during his leave of absence from the penitentiary between December 22nd and January 6th, as aforesaid. If it was true that Marceline did not know who the father of Oney was, that was conclusive that Oney was not born of the marriage of Hickman and Marceline, and during the time they were living together as husband and wife.

For Oney, a doctor was placed on the witness stand who treated the child, as disclosed by his testimony ascertained from his records, early in 1920. On examination by opposing counsel he stated in effect that the child must have been a year old at the time.

The evidence of several witnesses is to the effect that they placed the date of the birth of Oney relative to the Armistice of 1918; that at the time of the Armistice Oney had been born.

The record discloses that about three years after Hickman had been sent to the penitentiary Marceline lived with a man by the name of Berry; afterwards with one by the name of Marris, then again with Berry, and that she was the mother of several children by reason of this relation with Berry, the oldest being 4 years old or more at the time of the trial in the county court on the date aforesaid, which would place the birth of this child some two years prior to the time of her securing the alleged divorce from Hickman Willis. Berry testified that the oldest child was named or called Nettie Berry, but that he could not say who the father of this child was; that three of the children, younger than Nettie, were his.

Many of the witnesses, whose testimony stands in no wise discredited, testified to the effect that Oney was actually born in September, 1918. That is the effect of the mother's testimony: that is the effect of the doctor's testimony, who was called on behalf of Oney; and that is the effect of the testimony of the witnesses who placed the

date by reason of the Armistice, which was November 11, 1918.

We do not think that the authorities to the effect that a child born in wedlock is clothed with the presumption of legitimacy has any bearing as to her status. For the instant judgment, itself, can be construed in no other light than that the court found that Hickman Willis was a married man at the time of the ceremonial marriage with said Marceline. This being true, before the statute above quoted would stamp the offspring as legitimate, it must appear clear that the person is the issue of such alleged marriage, and where as a matter of law from the findings of the trial court the alleged marriage was a nullity, the burden is on the claimant to bring himself or herself within the provisions of the statute. The evidence in this case does not do so, and we must hold that the assignment of error as against the findings of the district court, as to Oney, must be sustained.

We conclude that the judgment of the district court must be affirmed as to Lodie, Lonie, and Filliah Jim (with the exception that the lien decreed upon the estate cannot be effective as to restricted Indian property); that it must be reversed as to Mattie and Oney, with instructions to the district court to enter a new decree in conformity herewith, and to direct the county court to enter an order determining heirs and distribution in accordance with this judgment.

HARRISON, LESTER, HUNT, CLARK, RILEY, and HEFNER, JJ., concur.

Note.—See under (1) 4 C. J. p. 876, §2853. (2) 7 C. J. p. 948, §19; 3 R. C. L. p. 723; 1 R. C. L. Supp. p. 882; 5 R. C. L. Supp. p. 198. (3) 38 C. J. p. 1344, §115.