## In re FULSOM'S ESTATE.
## KNIGHT et al. v. CARTER OIL CO. et al.

No. 18574. Opinion Filed Dec. 17, 1929.

Rehearing Denied Feb. 25, 1930.

Commissioners' Opinion, Division No. 1.

G. R. Horner, Lafayette Walker, J. S.

Severson, and W. E. Disney, for plaintiffs in error.

W. L. Ransom, for defendants in error J. R. Bond, R. R. Bell, C. S. Brown, and Lillian May Thomas.

REID, C. On March 7, 1922, Lillie May Thomas filed her petition in the county court of Creek county, alleging that Louisa Fulsom was a full-blood Creek Indian enrolled opposite roll No. 3917, and that among other lands there was allotted to her a certain described 40-acre tract situated in Creek county, and patent duly issued therefor; that the allottee died in 1904, leaving as her sole heir her sister, Jamimie Fulsom, who died in 1906, leaving as her only heir her one child, Lena Foster, nee Fulsom, nee Edwards, and that so far as petitioner is able to learn, she, Lena Edwards or Foster, thereupon became the sole and only heir of the allottee's estate. It was also stated in the petition that if there were any other claimants to said land, they were unknown to the petitioner, that no administrator was ever appointed for the estate of the allottee, and no necessity existed therefor, as she left no estate except her allotment; that no proceedings were ever had to ascertain who were her legal heirs and entitled to participate in her estate. And it was further alleged that, by purchase "through the heirs" of the allottee's estate, she had become interested therein and in its distribution, if any remained. She asked the court to declare who were the heirs of the estate of Louisa Fulsom at the time of her death: that notice issue and be served upon the heirs as provided by statute, and that publication be had as to any unknown and nonresident heirs.

Affidavit was made and filed by the petitioner for notice by publication, and notice was so given. On April 22, 1922, a decree was entered determining the heirship of the allottee as stated and prayed for in the petition. More than six months after the entry of such decree, but within one year thereafter, the plaintiffs in error in five different groups filed in the proceeding their respective petitions, in which it was alleged that certain of them were heirs of the allottee and that certain others named were owners, by purchase from heirs, of interests in said land; that neither of them was personally served with notice of the hearing to determine the heirship of the allottee; that they had no personal knowledge of such hearing in time to be present; that if it should be held that they were served at all, it was

by publication; that 12 months had not elapsed since the rendition of the decree. And in the prayers of these respective petitioners they asked that the decree be opened and that a decree determining the heirs be made in accordance with the claims set up in each of the petitions.

Upon hearing the petitions to vacate the decree of heirship in the county court, they were dismissed by the court. The petitioners appealed to the district court, where a similar result was had, both courts holding that the right of the petitioners to open the decree of heirship was barred by limitation. From this order and judgment the petitioners have brought appeal to this court. And the only question tried in the lower courts, and the only one necessary here and now to decide this appeal, is whether the petitions to open the decree of heirship were filed in time to permit the county court to hear them.

A proper conclusion upon this question calls for an examination of the Act of Congress of June 14, 1918, c. 101, 40 Stat. 606 (U. S. Comp. Stat. 1918, append., sections 4234a, 4234b) and Senate Bill 60, chapter 25, S. L. of Oklahoma 1919 (sections 1384 to 1389, inclusive, C. O. S. 1921). That part of the act of Congress relevant to the question is as follows:

"A determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the state of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said state for the determination of heirship in closing up the estates of deceased persons, shall be conclusive of said question: Provided, that an appeal may be taken in the manner and to the court provided by law, in cases of appeal in probate matters generally: provided, further, that where the time limited by the laws of said state for the institution of administration proceedings has elapsed without their institution, as well as in cases where there exists no lawful ground for the institution of administration proceedings in said courts, a petition may be filed therein having for its object a determination of such heirship, and the case shall proceed in all respects as if administration proceedings upon other proper grounds had been regularly begun, but this proviso shall not be construed to reopen the question of the determination of an heirship already ascertained by competent legal authority under existing laws. Provided, further, that said petition shall be verified, and in all cases arising hereunder service by

publication may be had on all unknown heirs, the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state; and if any person so served by publication does not appear and move to be heard within six months from the date of the final order, he shall be concluded equally with parties personally served or voluntarily appearing."

The foregoing acts of the Legislature and of the Congress have come before this court for discussion and decision upon certain phases, under the facts therein presented, in the following cases: State ex rel. Miller v. Huser, 76 Okla. 136, 184 Pac. 113; State ex rel. Bartlette et al. v. Wilcox, 75 Okla. 158, 182 Pac. 673; Homer v. Lester, 95 Okla. 284, 219 Pac. 392; Owens v. Kitchens, 105 Okla. 88 232 Pac. 797; Arnold v. Wills, 105 Okla. 172, 232 Pac. 15; In re Lewis' Estate, 100 Okla. 283, 229 Pac. 483; Lynch v. Thompson, 108 Okla. 295, 238 Pac. 212; In re Jackson's Estate, 117 Okla. 151, 245 Pac. 874; Sampson v. Lindley, 121 Okla. 252, 249 Pac. 285; Davis v. Harjo's Unknown Heirs, 137 Okla. 242, 279 Pac. 306; In re Estate of Willis, 129 Okla. 155, 265 Pac. 1064; Kelly v. Scott, 125 Okla. 208, 257 Pac. 303; Cox v. Colbert, 135 Okla. 218, 275 Pac. 317. But the exact question here presented does not seem to have been decided.

In the case of In re Jessie's Heirs, 259 Fed. 694, we find Judge Williams using this language in discussing these two acts, at page 704:

"The Act of Congress of June 14, 1918, relates to restricted or full-blood heirs of deceased citizen allottees of the Five Civilized Tribes. The proviso to section 1 of the Act of the Legislature of April 4, 1919, was enacted to give concurrence of the state procedure to section 1 of said act of Congress, and applies only to cases or petitions for determination of full-blood or restricted heirs, as a class, of deceased allottees. Otherwise, said proviso to said section 1 of the act of the Legislature of April 4. 1919. would conflict with section 12, art. 7. of the Constitution of Oklahoma. Ozark Oil Co. v. Berryhill, 43 Okla. 523, 143 Pac. 173. Chapter 145, Session Laws of Okla. 1919, emphasizes this conclusion. It provides in actions to quiet title, etc., or where 'the relief demanded consists wholly or partly in excluding' a person 'from any lien or interest' in such property, that the 'unknown heirs' may be joined as parties, and under the conditions prescribed service to be had by notice by publication. These acts of the Legislature, construed together, show that the provisions of section 12, art. 7, Const. Okla.. were in contemplation when same were passed."

In the case of Homer v. Lester, supra, this court exhaustively reviewed the Act of June 14, 1918, and chapter 25, S. L. 1919, supra, and in the syllabus had this to say about the state act:

"That part of Senate Bill No. 60, entitled: 'An act to provide for determination of heirship in all cases of deceased persons,' etc., approved April 4, 1919, attempting to confer jurisdiction on the county courts to render a judgment binding on record claimants, that is, persons who claim title to the land by purchase from heirs or alleged heirs, 'where the time limited by law * * * for the institution of administration proceedings has elapsed without their institution, as well as in the cases where there exists no lawful ground for the institution of administration proceedings in said court,' violates section 12 of article 7 of the Oklahoma Constitution, and is void."

It is directly stated in the original petition for determination of heirship in this case that the allottee was an enrolled full-blood Creek Indian, and the allegations are also sufficient to include the fact that the allottee's heir was restricted; therefore, it appears that the petitioner, at least, attempted to invoke the jurisdiction of the county court as conferred by the Act of Congress of June 14, 1918. And the power of Congress to legislate upon matters included in the act is recognized in the foregoing cases, and needs no further citation of authority to sustain it.

In some of the cases wherein the act of Congress and that of the Legislature here considered, were discussed, it was said that the Legislature, through Senate Bill 60, supra, enacted a procedural statute for the act of Congress. But such expression in those cases will not be construed to mean that the Legislature has the power to fix any limitation or rule of procedure at variance with the act of Congress.

Now, let us see whether there is any conflict in these acts affecting the question raised:

The act of Congress provides:

"* * * In all cases arising hereunder, service by publication may be had on all unknown heirs, the service to be in accordance with the method of serving nonresident defendants in civil suits in the district courts of said state; and if any person so served by publication does not appear and move to be heard within six months from the date of final order, he shall be concluded equally with parties personally served or voluntarily appearing."

That part of the act of the Legislature

relating to the same question is found in section 1387, C. O. S. 1921, and is as follows:

"The judgment of the court shall be final and conclusive on all persons appearing or who have been personally served with summons, and shall be final as to all those served by publication, unless any person so served by publication may file in said county court, within 12 months from the rendition of said judgment, a verified petition setting forth that he or she did not have actual notice of the hearing in time to be present at the hearing, and that he or she, in good faith, believes himself to be an heir of the decedent and the facts on which such belief is based, and in that event he shall be heard thereon."

It is seen that the act of Congress provides that the door shall be opened to those served by publication if they knock within **six months;** thereby unquestionably intending to deny admittance to those who apply thereafter. But the state act says they shall be heard if they apply within **twelve months.** The conflict cannot be reconciled. One of the acts is here controlling.

We think the controlling rule by which this questoin must be decided has been recognized in the cases interpreting the effect of section 9 of the Act of Congress of May 27, 1908 (35 Stat. 315, c. 199), providing that the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of such allottee's land: Provided, that no conveyance of any interest of any full-blood in such lands shall be valid unless approved by the county court having jurisdiction of the settlement of the estate of said allottee.

In deciding the cases which have come to this court calling for a definition of the authority of the county courts in approving such deeds, this court has many times said that such courts acted merely as federal agencies. Molone v. Wamsley, 80 Okla. 181, 195 Pac. 484; Haddock v. Johnson, 80 Okla. 251, 194 Pac. 1077; Snell v. Canard, 95 Okla. 145, 218 Pac. 813. And the Supreme Court of the United States announced the same conclusion in the case of Parker v. Richards, 250 U. S. 235, 39 Sup. Ct. 442, 63 L. Ed. 954.

The Act of Congress of May 27, 1908, did not provide any certain procedure to be followed in the approval of such deeds: and on June 11, 1914, this court promulgated rule 10 attempting to fix and regulate a course to be followed by the courts. But the court on December 14, 1920, in the case of Haddock v. Johnson, supra, held that it had no power to direct the procedure of the county courts while thus acting solely as a federal agency. And by chapter 198, S. L. 1915, the Legislature attempted to enact a comprehensive course of procedure to be followed by the courts in such approvals. But it was held that a failure of the county court to observe the requirements of that act in the approval of a deed did not render it invalid, as the Legislature had no power to control the procedure of such court when thus acting. Molone et al v. Wamsley, supra; Harrison v. Reed, 97 Okla. 254, 223 Pac. 141; Fisher v. Grider, 109 Okla. 23, 234 Pac. 570.

In State ex rel. Miller v. Huser, supra, this court in discussing the Act of June 14, 191, at page 141 of 76 Okla., said:

"Had Congress delegated the power and authority conferred by the act to the Commissioner to the Five Civilized Tribes, or to the county clerk of the county of the deceased allottee's residence, and had provided substantially the same procedure to guide such administrative officers in obtaining the desired end, which it certainly could have done, it is clear that no state law or constitutional provision could have defeated or impaired the exercise of that power. So, when we bear in mind that the county courts, in proceedings under the act, are acting merely as federal agencies and as administrative officers, as distinguished from courts exercising strictly judicial powers, it is equally clear that the laws of the state cannot be asserted to defeat or impair the operation of the act."

The congressional act expressly providing that a party served by publication and desiring to open a decree entered in such proceeding must present his petiiion within six months from the date of such decree, it was not within the power of the Legislature of this state to enact a statute having the effect to extend the time beyond that fixed by Congress.

The order and judgment of the trial court should be affirmed, and it is so ordered.

TEEHEE, LEACH, HERR, and FOSTER, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Indians," 31 C. J. §98, p. 524, n. 51.