## WILLIS v. SCOTT et al. *
### No. 185.

Circuit Court of Appeals, Tenth Circuit.
April 21, 1930.

Guy H. Sigler and H. A. Ledbetter, both of Ardmore, Okl. (H. E. Ledbetter and P. M. Jackson, both of Ardmore, Okl., on the brief), for appellant.

Philos S. Jones, of Muskogee, Okl. (Frank Lee, of Muskogee, Okl., on the brief), for appellees McMillan and Buddrus.

F. M. Adams, of Ardmore, Okl. (Adams & Orr, of Ardmore, Okl., Marion W. Reily, of Meridian, Miss., and Earl Richardson, of Philadelphia, Miss., on the brief), for appellee Scott.

W. F. Semple, of Durant, Okl. (A. H. Ferguson, of Durant, Okl., on the brief), for appellee Willis.

Before COTTERAL, PHILLIPS, and McDERMOTT, Circuit Judges.

COTTERAL, Circuit Judge.

In this suit brought by Mattie Rogers, she claimed to be the lawful wife and an

*For opinion denying rehearing, see 41 F.(2d) 523.

heir of Hickman Willis, deceased, and sought a decree awarding a one-third interest as such heir in certain land, located in Carter county, Okl., together with a like share of the oil and gas royalties derived from leasing the land and held by the Superintendant of the Five Civilized Tribes, and to that end annulling a decree of the Oklahoma Supreme Court, denying her status as such wife and heir and any interest in the land. 129 Okl. 155, 265 P. 1064. At the trial of the cause in the District Court, evidence was introduced by the parties, all issues of fact and law were found against the plaintiff, and her bill as amended was dismissed with prejudice. Also an injunction sought against the distribution of plaintiff's alleged share in the said royalties by the Superintendent and his disbursing agent was denied. The plaintiff has appealed from that decree.

The course of the proceedings which led to that decree were alleged in the bill. The appellant applied to the county court of Carter county, Okl., to determine the heirs of Hickman Willis, and, after due notice and hearing, that court decreed that appellant, as surviving wife and two of his children by a former marriage, Lodie Willis and Lonie Scott, were his sole heirs, and that Feliah Jim, a former wife, had a judgment lien for $10,000 against the estate. On appeal to the District Court, it was decreed that appellant, said two children and another child, Oney Willis, were the lawful heirs of the decedent. The proceeding being appealed to the state Supreme Court, it was there decided that the decree of the District Court be affirmed as to Lodie Willis, Lonie Scott, and Feliah Jim, except as to the latter's lien on restricted Indian property, and reversed as to appellant and Oney Willis, with instructions to the lower courts to enter decrees accordingly.

The further allegations of the bill are directed to an attack on this decree of the state Supreme Court. The bill sets out the alleged facts relative to appellant's claim to the land, and then charges the Supreme Court failed to give full faith and credit to the marriage and divorce laws of Mississippi in holding Hickman Willis was legally married to Feliah Jim, in that the undisputed evidence showed he had married Lilly Tubby there and had not been divorced, and failed to give full faith and credit to the divorce laws of that state in holding the marriage of appellant to him was void, when it was conclusively shown there had been a divorce from the former marriage; wherefore the decision was contrary to section 1, art. 4, of the Federal Constitution, and contrary to the Fifth and Fourteenth Amendments thereto, in refusing to credit certain vital evidence in the record and basing it on certain facts not in the record.

It is charged that Chief Justice Branson of that court was biased and prejudiced against appellant and her attorney, H. A. Ledbetter, had denounced him with obscene and profane language, on one occasion stating he would see that the attorney was disbarred, and thereafter a complaint was filed charging the attorney with three offenses, but the Supreme Court held they were without foundation; that the justice by a dissenting opinion in another case (Oklahoma City v. Baldwin, 133 Okl. 289, 272 P. 453) stated the products of a certain printer firm would be thrown in the wastebasket, and he would refuse to listen to any lawyer present a cause who had repeatedly circulated a slander and libel on the court or a member of it, referring to the firm which printed the brief and the said attorney who appeared as her attorney in the case.

It is then charged that no other member of the court read the record and briefs in appellant's case and no other member did so on rehearing, except the member who passed on the petition for rehearing; that the state Supreme Court consists of nine members under the State Constitution and laws, which require the concurrence of five members to render a decision, but said opinion was not so concurred in, wherefore it contravened the due process and equal protection clauses of the Fourteenth Amendment to the Federal Constitution, and it was arbitrary, capricious, unjust, and contrary to the recognized principles of equity and the standards of good conscience, a hearing was refused under the State Constitution and laws, and the court did not act judicially; that appellant's said attorney had an approved contract for a contingent fee in said cause and was interested therein, as Justice Branson knew; that the record shows appellant was the legal wife of Hickman Willis, and the opinion in that cause was a legal fraud, etc., wherefore it should be set aside and held for naught and appellant's right be restored to her as decreed by the state district court.

A guardian ad litem for Lodie Willis answered with a general denial. Lonie Scott, Lilly Tubby, and Feliah Jim Willis sepa-

rately pleaded to the bill. It is unnecessary to note the allegations of these pleadings. They put in issue the averments of the bill and set forth their claims. The Superintendent and disbursing agent of the Five Tribes moved to dismiss the bill on the ground that the Secretary of the Interior was an indispensable party to the suit, and the motion was overruled. They then answered, alleging that Hickman Willis was a full-blood restricted Choctaw Indian ward; that they were acting under the exclusive direction of the Secretary of the Interior; that they had collected but had not distributed the share of the funds claimed by the heirs of Hickman Willis, and would not do so pending court action; that, excepting certain outlays for Lodie Willis, she being the owner of at least a fourth interest in the land, the injunction against them was unnecessary, and again praying a dismissal of the suit, for want of the presence of the Secretary of the Interior as an indispensable party.

We need not refer fully to the evidence taken at the trial of the case. There was a summary of the evidence in the former case, on which the parties based their claims, including depositions of lawyers respecting the marriage and divorce laws in Mississippi and the statutes of Arkansas in force in Indian Territory, a showing appellant asked a rehearing in the state Supreme Court, and afterward applied to the Supreme Court of the United States for a writ of certiorari in 1928, and after its denial sought and was refused a rehearing. There was evidence to show the amount of funds accumulated for the estate and held by the Interior Department and the partial distribution to Lodie Willis. In addition, undisputed evidence was introduced to show the prejudice of Justice Branson toward appellant's attorney. It showed he had denounced the attorney in severe, profane terms, and it is in testimony he was aware of the attorney's interest in the case. His dissenting opinion in Oklahoma City v. Baldwin, supra, was introduced. His antipathy to the printer firm was shown; also the disbarral of the attorney. The further details need not be recited. In was in accord with the averments in the bill in that regard. There was no testimony that the justices of the state Supreme Court did not read and consider the record and briefs in the appeal to that court.

The decision of the state Supreme Court is sought to be annulled as void on the three grounds, that it resulted from the prejudice of the justice who wrote the opinion against appellant's attorney; that it was rendered without a reading of the record and briefs by any member of the court; and that it ignored certain questions and rested on matters outside of the record—therefore the court acted arbitrarily and not judicially.

The extreme prejudice of Justice Branson may be assumed; yet it does not render the decision void. The subject was fully and carefully considered by this court in Owens v. Dancy, 36 F.(2d) 882, and it was there ruled that the act of a disqualified judge is not void, but voidable only, and, while it is reviewable on error or appeal, it is not subject to collateral attack. The late case of Tumey v. Ohio, 273 U. S. 510, 47 S. Ct. 437, 71 L. Ed. 749, 50 A. L. R. 1243, was cited. That was a review on error. Even in that case, it was ruled that direct, personal, substantial pecuniary interest works a judicial disqualification, but kinship, personal bias, or remoteness of interest are generally but matters of legislative discretion. It was also decided in the Owens v. Dancy Case upon the authority of state statutes and decisions, that the question of disqualification must be presented to a judge and may be made effective by mandamus, and that otherwise there is no ground of complaint. It is said here the prejudice of the justice was unknown to counsel when the writ of certiorari was sought from the Supreme Court of the United States. But the fact, if possibly true, is unavailing, as it was attributable solely to a legislative omission of remedy. We find no sufficient reason to hold the decree in the state court void on this ground.

The next two grounds may be considered together. The first of them includes an assertion of error in the decree, because it was contrary to provisions of the State and Federal Constitutions and the state laws. It was an adjudication among parties before the court, and concludes them not only against such an attack, but in all other litigation where the same cause of action is involved. The familiar doctrine was announced in Owens v. Battenfield, 33 F.(2d) 753, 757 (8 C. C. A.). There is nothing to differentiate this case, as alleged to be lacking in due process and the equal protection of the laws, nor to hold it vulnerable because arbitrary and capricious and contrary to equitable principles and the standards of good conscience. We are justified in this view by

the decisions in Owens v. Battenfield, supra, and Riverside Oil & Refining Co. v. Dudley (C. C. A.) 33 F.(2d) 749. The requisite facts and proceedings are not made to appear, and especially in support of the charge that the justices did not read and consider the record and briefs. Notwithstanding the testimony that Justice Branson would not do so, there is no showing that he or any of the concurring justices omitted their duty in that regard. All of them heard the oral arguments. It could not have been more than an irregularity, and did not affect the validity of the judgment in the slightest degree. Wagner Electric Mfg. Co. v. Lyndon, 262 U. S. 226, 43 S. Ct. 589, 67 L. Ed. 961. The assertion stands without proof. It is opposed by the opinion itself and the report showing concurrence of the other justices. It is conceded the justice who passed on the rehearing read the record and the briefs. And, as the trial judge in this case found the facts on all issues against the appellant, that finding sustained by ample evidence, which evinces no clear mistake, is accepted in this court. New York Life Ins. Co. v. Griffith (C. C. A.) 35 F.(2d) 945; United States v. Board of National Missions (C. C. A.) 37 F.(2d) 272.

It is unnecessary to pass upon the defense of the Indian Superintendent and his disbursing agent, as our decision leaves intact the adjudication of the Supreme Court.

Our conclusion is that the decree of the District Court was right, and it is therefore affirmed.