**In re MICCO'S ESTATE.**

Civil Action No. 854.

District Court, E. D. Oklahoma.

March 6, 1945.

Cleon A. Summers, U. S. Atty., of Muskogee, Okl., for the United States.

J. Hugh Nolan, of Okemah, Okl., and Anglin, Stevenson & Huser, of Holdenville, Okl., for administrators.

M. S. Robertson, U. S. Probate Atty., of Muskogee, Okl., for restricted Indian heirs.

Harry Seaton, of Tulsa, Okl., for Sherman Micco, an intervening claimant.

RICE, District Judge.

This proceeding originated in the County Court of Okfuskee County, Oklahoma, by the filing of a petition for the appointment of an administrator of the estate of Peter Micco, deceased. The petition discloses that the deceased left an estate of the approximate value of $500,000, and that his heirs are full-blood Indians.

Removal to this court was upon petition filed by the United States Government, pursuant to a notice caused to be served upon the Superintendent of the Five Civilized Tribes by the United States Probate Attorney, acting in his official capacity, and for alleged incompetent minor heirs of the deceased. The Petition for Removal filed by the United States discloses that the deceased was enrolled as a three-fourths blood Seminole Indian and that a portion of the estate of said deceased is restricted property under the laws of the United States, and that the heirs at law of said Peter Micco are restricted Indians. The basis of the notice caused to be served by the United States Probate Attorney was a Motion to Dismiss filed in the County Court of Okfuskee County, Oklahoma, challenging the jurisdiction of the County Court to appoint an administrator for two reasons: first, Micco was not a resident of Okfuskee County at the time of his death; and second, the petitioner was not authorized to file the petition, being neither a relative of the deceased nor a creditor of his estate.[1]

Before removal here, the County Court appointed co-administrators who filed their bonds and qualified as such. After the decision in Merrell v. United States, 10 Cir., 140 F.2d 602, the government abandoned any contest as to the jurisdiction of the County Court to appoint an administrator and filed herein its Complaint in Intervention, seeking the judgment of this Court determining the heirs of the deceased. In addition, the government alleges that since the death of Peter Micco one of his heirs, Haney Micco Larney, has died leaving a will which has been admitted to probate by the County Court having jurisdiction of the settlement of her estate, and that since the death of Haney Micco Larney one of her heirs, towit, Johnnie Lee Larney, has died intestate. On these allegations the Court is asked to determine whether or not the will of said Haney Micco Larney transferred her interest in the estate of Peter Micco, deceased, to the devisees and legatees named therein, and if not, to determine the heirs of the said Haney Micco Larney and also the heirs of Johnnie Lee Larney, the ultimate relief sought by the government being a determination of who are now the rightful owners of the property left by Peter Micco, deceased, what interest each takes, and a further decree determining which properties of the deceased are restricted and subject to the supervision of the Secretary of the Interior.

A probate proceeding—nothing more— was removed. Equitable relief which might appropriately be granted in an original action filed herein by the United States government is now sought. The question is—does this court have jurisdiction to proceed and determine in this removed proceeding the issues presented in the government's Complaint in Intervention? Stated another way—is a probate proceeding removable under Section 3 of the Act of April 12, 1926, 44 Stat. 239?[2]

The jurisdiction of this Court has been challenged by Motion to Remand filed herein by the administrators appointed by the County Court. For the first time, the government has definitely taken the position that this Court has probate jurisdiction in these Indian cases. At the request of this Court the government filed its brief herein stating clearly and definitely its position. Its position, as stated in its brief, is:

"1. Whether proceedings for the probate of the estate of a deceased, restricted

---

[1] For a discussion of the facts in regard to the conflict as to the place of residence of the deceased during his lifetime, and at the time of his death, see Micco, Guardian, v. Huser, 185 Okl. 394,

91 P.2d 1069, and Merrell v. United States, 10 Cir., 140 F.2d 602.

[2] Hereinafter referred to as the Act of 1926.

Indian allottee of the Five Civilized Tribes who is survived by restricted Indian heirs are removable to the federal court under Sec. 3 of the Act of April 12, 1926, 44 Stat. 239.

"2. Whether, if such proceedings are removable, the federal court may exercise complete probate jurisdiction *and fully administer the unrestricted estate.*" (Emphasis supplied)

Admittedly, the question presented is not without difficulty. The difficulty is presented by the fact that this jurisdiction is committed to the conclusion that a contest over the probate of a will devising restricted property of a deceased restricted member of the Five Civilized Tribes is removable. Caesar v. Burgess, 10 Cir., 103 F.2d 503. On the other hand, the courts of this jurisdiction are committed to the conclusion that this court does not have general probate jurisdiction nor are probate proceedings removable under the general removal statutes. Caesar v. Burgess, supra; House v. United States, 10 Cir., 144 F.2d 555 (a removed case).

In the Jackson Barnett case, Scott v. Beams et al., and four other cases, 10 Cir., 122 F.2d 777, the right of the government to remove a probate proceedings from the County Court was not discussed. That case was a consolidation of a proceeding removed from the County Court of Muskogee County, Oklahoma, with two quiet title suits, one removed from the State District Court of Muskogee County, and the other removed from the State District Court of McIntosh County, seeking a determination of the heirs of Jackson Barnett. After removal, the probate proceeding was consolidated with the two quiet title suits. Thereafter, Judge Williams entered an order retaining jurisdiction in the probate proceedings for the sole purpose of determining heirs, and remanded such proceedings for the appointment of an administrator and further proceedings by the administrator. The procedure followed by Judge Williams in the Jackson Barnett case was the same as he had followed in Caesar v. Burgess, supra, wherein he retained jurisdiction solely for the purpose of determining the contest of the will, and in an earlier case of In re Palmer's Will, D.C., 11 F.Supp. 301. It is interesting to note that the Palmer's Will Case, the first of its kind to be removed, was not removed until after trial in the County Court and while pending on appeal in the District Court. The government has recently taken the position in this Court that an attempted removal after appeal is ineffective, and this Court does not acquire jurisdiction.

After the decision in Scott v. Beams, supra, came the decision of the Supreme Court of the United States in United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 88 L.Ed. 1326, which will be discussed later on in this Memorandum.

If this Court has the jurisdiction contended for by the government, it is by virtue of Section 3 of the Act of 1926. Said Section refers to "parties to a suit" as "plaintiff, defendant, or intervenor." It provides that the United States "may appear in said cause within twenty days" after service of notice. Twenty days is the time provided by the laws of Oklahoma for a defendant in a civil suit in the District Courts to answer. The history of this legislation shows that an effort was made to change the time within which the government should appear from twenty days to sixty days. Objection was made to this change for the reason that it was not deemed wise to attempt to change the procedure of the State Courts of Oklahoma. Obviously, the Members of Congress were not thinking of the probate procedure of the County Courts of Oklahoma. See Congressional Record, Vol. 67, part 6, pages 6517 and 6573. In order to conform to state procedure and still have additional time, it was provided that "the trial court" (meaning State Court) may extend the time within which the United States may appear. When such a suit is removed, the Act provides: "and *the cause* shall then proceed in the same manner as if it had been *originally commenced* in said district court."

■ A careful reading of Section 3, accepting the language as the terms therein are ordinarily understood, does not suggest a probate proceeding. Conceding, for the moment, that the term "suit" as used in the Act, in its broadest interpretation and meaning, includes a probate proceeding, the fact remains that such is not its ordinary and accepted meaning, and we should presume Congress used it in its ordinary and accepted meaning. If Section 3 is to be construed as the government contends for, it confers upon the United States District Courts of the eastern half of Oklahoma jurisdiction in a vast field of law and a jurisdiction which does not exist

by the general act of Congress. One would presume that had Congress intended to make such a sweeping change in the jurisdiction of the United States District Courts of this jurisdiction, apt language to that effect would have been used, leaving the matter free from doubt. If it had been the purpose of Congress to thus enlarge the jurisdiction of the courts insofar as restricted members of the Five Civilized Tribes are concerned, it is difficult to understand why the Department of the Interior, immediately upon the passage of the Act, and the Department of Justice did not so understand it. The intent of Congress should have been better known then than it is now, nineteen years after the passage of the Act.

The Act of 1926 was passed for the purpose of affording relief insofar as the permanence of Indian titles in the eastern part of Oklahoma is concerned. It has been said "such act is a remedial statute for permanence of titles and that judgments in all such actions should be binding on all parties." United States v. Thompson, 10 Cir., 128 F.2d 173, 176.

In Board of Com'rs of Tulsa County v. United States, 10 Cir., 94 F.2d 450, 452, Section 2 of the Act was under consideration. Therein, Judge Lewis, speaking for the Court, stated:

"The suit above described must be one claiming 'title to or an interest in lands allotted to a citizen of the Five Civilized Tribes or the proceeds, issues, rents and profits derived from the same.'"

The decision in Caesar v. Burgess, supra, was based upon the proposition that title to real estate was involved. Therein, Judge Bratton said [103 F.2d 507]:

"The supreme court of the state (Oklahoma) has held repeatedly that a contested proceeding for the probate of a will is a special proceeding in the nature of an equitable action."

Emphasis was placed upon the fact that a valid will operates as an alienation within the meaning of Congressional enactments. The conclusion is inescapable that the language in Caesar v. Burgess was carefully chosen for the purpose of restricting the decision to the narrow question involved, towit, a contest of the probate of a will, and the basis for the decision is that it is in the nature of an equitable proceedings affecting title to real estate and involving alienation of real property. The decision of the Circuit Court in each instance wherein the right of removal is discussed is based upon the fact that title to land, or issues, rents and profits therefrom, was involved.[3] This is in keeping with the legislative history of this legislation. In the Report of the Committee on Indian Affairs submitted by Mr. Hastings, Congressman from Oklahoma, he made this statement:

"This bill was introduced in the later part of the last session of the Sixty-eighth Congress and extended hearings were held on it, but no report was made, and the same was reintroduced in the present session of Congress. It contains three sections.

"The first section amends section 9 of the act of May 27, 1908, and deals with the approval of conveyances made by full-blood heirs of deceased allottees of the Five Civilized Tribes. It is for the purpose of stabilizing titles and will be of benefit to all land owners in eastern Oklahoma, Indian and white, in that the title of lands of deceased allottees may be made more definite and certain, and there will be less difficulty with reference to same.

"Section 2 extends the statute of limitations to the restricted Indians of the Five Civilized Tribes. It does not affect any pending lawsuit, and it gives two years additional time in the event the statute of limitation is about to run within which to institute any suit wherein the interests of a restricted Indian of the Five Civilized Tribes is involved.

"Section 3 provides only where the interest of a restricted Indian of the Five Civilized Tribes is being litigated in the State Courts that service may be had upon the Government, and the Government is given the right to choose the forum in which the *suit* may be tried and may transfer such *case* to the United States district court upon motion in the event that the Government chooses to do so. If said *case* is not transferred the decision of the court is final, and

---

[3] Hosey et al. v. Kennamer et al., 8 Cir., 21 F.2d 64; Fish et al. v. Kennamer, 10 Cir., 37 F.2d 243; United States et al. v. Mid-Continent Petroleum Corporation, 10 Cir., 67 F.2d 37; McKay v. Rogers, 10 Cir., 82 F.2d 795; Whitchurch v. Crawford, 10 Cir., 92 F.2d 249; Caesar v. Burgess, 10 Cir., 103 F.2d 503; United States v. Fixico et al., 10 Cir., 115 F.2d 389.

it would prevent a *new suit* from being instituted for and on behalf of a restricted Indian thereafter by the Government.

"The entire bill is designed to stabilize titles in eastern Oklahoma and it is expected that it will add value to these lands. The bill has the approval of the Secretary of the Interior, as evidenced by the report which is attached hereto and made a part of this report."

It will be noted that Congressman Hastings, who was a lawyer, used the terms "suit" and "case" interchangeably, and referred to the fact that the government would be prevented from instituting a new "suit". The "new suit" mentioned by the Congressman could not possibly be a probate proceeding because no one contends that the government may institute a probate proceeding. The "extended hearings" mentioned by Congressman Hastings discloses that no mention was ever made concerning a probate proceeding. I have carefully read the hearings before the Subcommittee of the Committee on Indian Affairs, House of Representatives, Sixty-Eighth Congress, Second Session, printed and published by the Government Printing Office, dated January 6, 1925. A probate proceeding is nowhere mentioned. Seven attorneys from Oklahoma appeared before this Subcommittee to present to the Committee the necessity and purpose for such legislation. Briefly stated, the necessity was due to the fact that no statute of limitations was applicable to restricted Indians under the decisions of the court, and a judgment against an Indian, involving restricted lands, was not binding upon either him or the United States Government, the result being that there was no such thing as a good title derived from a restricted Indian. The other involved the uncertainty as to the proper County Court for the approval of a deed by a full-blood Indian heir. The Hon. James B. Diggs, of Tulsa, Oklahoma, made an extended statement before the Committee, in which he said:

"Our court has held that the statute of limitations does not apply to any Indian until 15 years after the removal of his restrictions. * * * Another condition that exists there (in Oklahoma) is this: An Indian may sue you on a question of title. If he recovers the judgment is good against you as claimant and he gets the land, but if the Indian fails in that suit the Indian nor his heirs are not bound. So the condition exists in Oklahoma that the Indian can sue you and you can win. The Indian can appeal that case from the lower court to the Supreme Court of Oklahoma and you win. The case may then be appealed from the Supreme Court of Oklahoma to the United States Supreme Court and you win again and yet your title is not acquired. * * * After you have done all this Mr. Indian or his heirs can turn around and sue you again, and you could go through the same process to the United States Supreme Court and still your title is not good, though you have won, and then on top of all that the United States can bring a suit retrying identically the same question."

The statement of the Honorable C. B. Ames, General Counsel for the Texas Company, and formerly Solicitor General of the United States, was substantially to the same effect. None of the gentlemen from Oklahoma made any complaint concerning the remedy provided by the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. §§ 375, 355.[4]

██ The contention is now made that in a probate proceeding the Probate Court may determine the heirs of a decedent and therefore title to real estate is involved. No court has ever said so. The authority of the County Courts of Oklahoma to determine the question of fact of who are the heirs of a deceased allottee of the Five Civilized Tribes leaving restricted heirs is found in the Act of Congress approved June 14, 1918, supra. It is to be presumed that Congress, in passing the Act of June 14, 1918, and the Act of April 12, 1926, were aware of a limitation upon the jurisdiction of the Probate Courts or County Courts of Oklahoma, as follows: "Provided, That the County Court shall not have any jurisdiction in any action

---

[4] Section 1 of said Act, 25 U.S.C.A. § 375, provides in part as follows:

"that a determination of the question of fact as to who are the heirs of any deceased citizen allottee of the Five Civilized Tribes of Indians who may die or may have heretofore died, leaving restricted heirs, by the probate court of the State of Oklahoma having jurisdiction to settle the estate of said deceased, conducted in the manner provided by the laws of said State for the determination of heirship in closing up the estates of deceased persons, *shall be conclusive of said question.*" (Emphasis supplied).

* * * or in any matter wherein the title or boundaries of land may be in dispute or called in question." Sec. 12, Art. 7, Constitution of Oklahoma.

The Statutes of Oklahoma provide that in a probate proceeding incident to the final settlement of the accounts of an administrator and the distribution of the funds remaining, the Court may determine the heirs of the decedent. Prior to the passage of the Act of 1918 the authority for such a determination was found in Sections 6463, 6464, 6466, and 6488, Revised Laws 1910, 58 O.S.1941 §§ 631, 632, 634, 641. After the passage of the Act of 1918, and in the year 1919, the Oklahoma Legislature passed an Act designed to enable the Oklahoma Courts to comply in every particular with the express wish of Congress as contained in the Act of 1918. 84 O.S.A. § 251 et seq. Cf. Hardridge v Hardridge, 168 Okl. 7, 31 P.2d 597; Hetherington v. Foster, 173 Okl. 440, 49 P.2d 760; Gassin v. McJunkin, 173 Okl. 210, 48 P.2d 320. It has never been considered in Oklahoma that this provision for the determination of heirs incident to the settlement of an estate is violative of the Constitutional provision, supra.

The Courts of Oklahoma recognize the plenary authority of Congress to legislate for full-blood members of the Five Civilized Tribes concerning their restricted lands, and in construing the authority of the County Courts under the Act of 1918, have scrupulously recognized that power. State ex rel. Miller v. Huser, Okfuskee County Judge, 76 Okl. 130, 184 P. 113. No effort is made to apply said Act where all the heirs are unrestricted. Moore v. Jefferson, 190 Okl. 67, 120 P.2d 983. In order to enter a valid decree of heirship in a probate proceedings under said Act, the court must acquire jurisdiction of unrestricted assets. Moore v. Jefferson, supra; Hardridge v. Hardridge, supra. Probate Courts of Oklahoma do not assert jurisdiction over restricted property of Indians. Cowokochee v. Chapman, 90 Okl. 121, 215 P. 759; Ryburn v. Carney, 170 Okl. 255, 39 P.2d 9; Barnard v. Bilby, 68 Okl. 63, 171 P. 444. In a probate proceeding under the Act of 1918, the Court does not try title to land. In re Jackson's Estate, 117 Okl. 151, 245 P. 874; Arnold v. Willis, 105 Okl. 172, 232 P. 15. An owner of an interest in land purchased prior to the date of the passage of the Act of 1918 is not brought into nor bound by probate proceedings instituted thereunder. Homer v. Lester, 95 Okl. 284, 219 P. 392. In probate proceedings under said Act of Congress the County Courts of Oklahoma act as an administrative agency of the United States Government to *determine the question of fact* as to who are the restricted Indian heirs of a deceased citizen allottee of the Five Civilized Tribes of Indians. State ex rel. Miller v. Huser, supra [76 Okl. 130, 184 P. 124], wherein the Court said: "The words 'the question of fact' were employed by Congress to make clear its purpose that the agencies designated were to exercise administrative functions as distinguished from strictly judicial functions." The Court in State ex rel. Miller v. Huser did not find it necessary to determine whether or not said Act conflicted with the constitutional provision limiting the jurisdiction of Probate Courts in Oklahoma, nor whether title to real estate is involved. In the opinion the Court compares the finding of fact of heirship made by the County Court as similar to the action of Congress in making the approved rolls conclusive as to the quantum of blood of an enrolled Indian. The opinion of the Supreme Court in the Huser case was referred to in McDougal et al. v. Black Panther Oil & Gas Co. et al., 9 Cir., 273 F. 113, 118, as "exhaustive, instructive, and convincing." The Federal Courts have concurred with the opinion in the Huser as to the nature of the proceedings had in the County Court.

"The county court in such capacity is, in effect, a federal agency, acting with the same result as if it was done by the Superintendent of the Five Civilized Tribes, the Commissioner of the Land Office, or the Secretary of the Interior." In re Jessie's Heirs, D.C., 259 F. 694, 704.

Cf. Barnett v. Kunkel et al., 9 Cir., 259 F. 394; Marcy v. Board of County Commissioners, 45 Okl. 1, 144 P. 611; Knight et al. v. Carter Oil Co., 141 Okl. 300, 285 P. 13.

Congress has never, in my opinion, intentionally enacted any legislation requiring the United States District Court, or any other Federal Court, to act in an administrative capacity. To contend that by the language of Section 3 of the Act of 1926 Congress intended to substitute the United States District Courts in eastern Oklahoma for the County Courts in Oklahoma in performing an administrative act and becoming an instrumentality of the

Federal Government in an administrative capacity is difficult to believe, and it is still more difficult to believe that Congress intended that in the conversion of the United States District Court from a court into an administrative agency it would thereby convert the United States District Court into a probate court.

County Courts of Oklahoma since the Act of Congress of 1908, 35 Stat. 312, have been authorized to approve deeds of full-blood Indian heirs to inherited lands. In so doing they act as a Federal agency in an administrative capacity. So far, no one has assumed that such a proceeding may be removed to the Federal Court under Section 3 of the Act of 1926.

It is doubtful if title to land is involved in the determination of heirship under the Act of 1918. State ex rel. Miller v. Huser, supra. The first instance in which the government contended that title to land was involved in the proceeding for the determination of heirs had in the County Court was in Roberts v. Anderson et al., 10 Cir., 66 F.2d 874, 879. The contention was first made on appeal. The decision on appeal did not turn upon such contention. Judge McDermott, however, in the opinion commented upon this situation as follows:

"The act (Act of 1926) does not clearly refer to heirship proceedings in the probate court; nor are probate proceedings ordinarily removable; an heirship proceeding may indirectly affect the title to lands, or it may not. The point is not necessary to a disposition of the cause, and Congress may clear up any uncertainty that exists before it again arises. We therefore leave it as we find it."

Congress has not taken any steps to clear up the situation which Judge McDermott mentioned. A decree of heirship does not operate directly or indirectly to transfer lands. Title to inherited lands vests by operation of law in the heirs of the deceased at the moment of his death. The contention advanced in Roberts v. Anderson, supra, apparently was abandoned in United States v. Hellard, 322 U.S. 363, 64 S.Ct. 985, 986, 88 L.Ed. 1326, wherein the Supreme Court had under consideration the Act of June 14, 1918, 40 Stat. 606, 25 U.S.C.A. §§ 375, 355. One section of said Act deals with partition of land. Another section is that providing that the probate courts of the State of Oklahoma may determine heirs of any deceased allottee of the Five Civilized Tribes who might die leaving restricted heirs. The Court said:

"It seems clear from the language of the Act of June 14, 1918 and its legislative history (S.Rep. No. 330, 65th Cong., 2d Sess.) that Congress vested in the Oklahoma state courts jurisdiction to determine heirship in these restricted lands (§ 1) and jurisdiction to partition them. § 2. See Salmon v. Johnson, 78 Okl. 182, 189 P. 537; United States v. Bond, 10 Cir., 108 F.2d 504. The authority of Congress to select state tribunals to perform such functions is clear. Parker v. Richard, 250 U.S. 235, 39 S.Ct. 442, 63 L.Ed. 954; Harris v. Bell, 254 U.S. 103, 41 S.Ct. 49, 65 L.Ed. 159; Stewart v. Keyes, 295 U.S. 403, 55 S.Ct. 807, 79 L.Ed. 1507. But a grant of jurisdiction to a particular court without more does not determine what parties are indispensable to the proceedings in question. *Petitioner concedes that the United States is not a necessary party to proceedings to determine heirship under § 1 of the Act of June 14, 1918.* (Emphasis supplied). Since restrictions on alienation do not prevent inheritance, no governmental interest is at least directly involved in such a determination. It may likewise be inferred from the language, nature, and purpose of Acts of Congress which vest jurisdiction over specified Indian affairs in a designated court that Congress not only has made *that tribunal the exclusive agency to effectuate the federal policy but also has dispensed with any requirement that the United States be a party to the proceedings.*" (Emphasis supplied.)

The Act of 1926 provides for service of notice upon the United States in those actions wherein the United States is an indispensable party in order that the judgment rendered therein may be binding upon the United States government. It seems to follow, as the night does the day, that the converse of that is true, towit, if the United States government is bound by the proceedings without being made a party, then the notice is not required to be served, and if served, it is inoperative to effect a removal or to give jurisdiction to the court to which the proceedings are transferred.

From a practical standpoint there are many objections to the removal of such a proceeding, but while the practical objections should not out-weigh a clear mandate of an Act of Congress, such practical

objections certainly are worthy of much consideration in determining whether or not Congress intended that which is now sought. For example, in this case the County Court has already appointed administrators. They have qualified under the law of Oklahoma. They are officers of the County Court of Okfuskee County, Oklahoma. If this court is to become a probate court and administer the unrestricted assets of Peter Micco, deceased, is it required to do so with administrators appointed by the state court? May this court discharge said administrators and appoint new ones, although the jurisdiction ·of the County Court to make the appointment is exclusive,? Merrell v. United States, supra. If the discharged administrators should desire to appeal, to what court would they appeal? Would this court give notice to creditors, and if so, how? Would this court be required to approve and disapprove claims after approval or disapproval by the administrator? In the progress of the administration in this court, what law would govern as to an appealable order, and in the event of an appeal what would become of the right of the appellant to a trial de novo which he has upon appeal from the County Courts to the District Courts of Oklahoma? The practical result of this removal is the same as if an injunction should issue by this court prohibiting the County Court from proceeding for the purpose of having this court rather than the County Court determine *the question of fact* of who are the heirs of Peter Micco, deceased. The reason for having that determination here rather than the County Courts is difficult to divine. Some may conceive that it may be done better in the Federal Court. It might, or it might not. Federal Courts and State Courts are supposed to work in comity, each respecting the field allocated to the other, under our system of government. A procedure which would oust the County Court of its jurisdiction in certain selected proceedings, unless clearly warranted under some Act of Congress, is a radical departure from that traditional concept of our government and should originate in Congress rather than in the courts.

In the final analysis, all that is attempted here· is to remove a probate proceedings from the County Court and thereby prohibit the County Court from proceeding further, and thereupon have this Court exercise its traditional equity powers—not probate powers—in determining two things, towit: what property is restricted, and the fact of who are the heirs of the deceased. This court has at all times been available in an original action to determine these questions. Its jurisdiction in an original action is clear. Certainly its jurisdiction in a removed action is doubtful. In my judgment its lack of jurisdiction is clear.

For the reasons stated herein, the Complaint in Intervention filed by the United States Government is dismissed, without prejudice to the filing of a complaint herein seeking the same or similar relief. The Complaint in Intervention filed on behalf of Sherman Micco is dismissed. To which action of the Court the government and Sherman Micco except.

The proceedings are remanded to the County Court of Okfuskee County, Oklahoma.