**HORRIGAN et al. v. GIBSON et al.**

No. 10519—Opinion Filed March 28, 1922.

Rehearing Denied April 18, 1922.

Application to File Second Petition for Rehearing Denied July 11, 1922.

(Syllabus.)

1. **Appeal and Error—Review—Sufficiency of Evidence—Indian Heirship—Marriage.**

Although the evidence as it appears in the record is not particularly satisfying or convincing, it probably would be sufficient to support the judgment of the trial court if the record were otherwise free from error.

2. **Marriage—Proof —Marital Cohabitation and Reputation.**

Marital cohabitation and reputation do not constitute marriage; they are merely facts from which it may be presumed that the parties actually entered into a marriage when the cohabitation commenced.

3. **Same—Presumption—Cohabitation with Two Women.**

If during the cohabitation with one woman, the man cohabits also with another woman, no presumption of a marriage with either arises.

4. **Same—Indian Marriage—Legitimacy — Rejection of Evidence—Prejudicial Error.**

Record examined, and held: First, that the trial court committed error by improperly rejecting certain evidence offered by the defendants; second, that, after a careful examination of the entire record, it appears that the error complained of probably resulted in a miscarriage of justice.

Error from District Court, Coal County; J. H. Linebaugh, Judge.

Action by Sylvia Gibson and others against J. H. Horrigan and others to recover interest in inherited Indian land, for partition, etc. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

E. Moore and Jas. R. Wood, for plaintiffs in error.

George Trice, for defendants in error.

KANE, J. This was an action for the recovery of an interest in certain real estate commenced by the defendants in error, plaintiffs below, against the plaintiffs in error, defendants below.

The land in controversy was the allotment of Sukey Williams, a member of the Chickasaw Tribe of Indians, who, in the year 1905, died intestate in what is now the county of Pontotoc, state of Oklahoma, leaving surviving her no father, nor mother, nor issue. The plaintiffs allege that one Simon Williams, who died prior to the death of the allottee, was the father of Sukey Williams by one woman, and also the father of the plaintiffs by another woman; that Sukey Williams being born in lawful wedlock, the plaintiffs were her brothers and sisters of the half blood, and therefore took by inheritance an undivided one-half interest in her allotment under the laws of Arkansas in force in the Indian Territory at the time of her death.

It is conceded that Malinda Walton, deceased, was the mother of Sukey Williams, and that the defendants, who claim through deeds executed by the surviving sisters of Malinda Walton, would have good title unless the claim of the plaintiffs hereinbefore set out can be established.

Horrigan and Allen, two of the defendants, took possession of the land immediately after the execution of these deeds, some ten or more years ago, and have been in possession ever since. The answer of the defendants denied the allegations of plaintiffs' petition, set up their chain of title, and pleaded the statute of limitations.

In a trial to the court there was judgment for the plaintiffs, to reverse which this proceeding in error was commenced. Counsel

for plaintiffs in error in their brief summarize their contentions as follows:

"In the discussion of their grievances in this proceeding, the plaintiffs in error will, for the sake of abridgment and conciseness, separate the case into two propositions.

"The first of these will have to do with the question of the legitimacy of Sukey Williams, and with its kindred subject, the cohabital relations which her mother, Malinda Walton, about the time of the birth of the decedent, had with decedent's putative father and with other men.

"The other proposition will involve the question as to the applicability of the statutes of limitation to the facts as they are discussed by the record in the case."

Under their first proposition, counsel concede that the evidence tends to show cohabitation and association between Simon Williams and Malinda Walton several years prior to the birth of Sukey Williams, but they say that there is nothing in the record tending to show that these relations existed at the time of the birth of Sukey Williams, or that Simon and Malinda were cohabiting together within one year's time prior to that event. They say that, in these circumstances, the evidence was not sufficient to show an Indian custom marriage, as contended for by the plaintiffs.

We have examined the evidence with considerable care, and are of the opinion that there is some evidence in the record reasonably tending to support the finding of the trial court on this point. Although the evidence, as it appears in the record, is not particularly satisfying or convincing, it probably would be sufficient to support the judgment of the trial court if the record were otherwise free from error.

It was alleged that the Indian custom marriage relied on was consummated some 33 or 34 years prior to the trial of the case. The witnesses for the plaintiffs were all Chickasaws or freedmen, and nearly all of them testified with the aid of an interpreter. Wesley Benton, who testified as favorably for the plaintiffs as any of them, may be used as a typical witness, and a summary of his evidence will serve not only to show the nature of the evidence supporting the judgment, but serve as a predicate for another branch of this assignment of error, which will be considered later.

Wesley Benton testified, in substance, as follows: I have known Simon Williams and Malinda Walton all my life. Simon lived at David Benton's home, and Malinda lived about one mile west of there. Simon and Malinda used to come to our house and stay two or three weeks at a time, during which visits they always slept together in the same bed. The people in that neighborhood looked upon them as man and wife. Other witnesses testified that they heard both Simon and Malinda say that Sukey was their child. There was other evidence to the effect that Simon Williams was married to an Indian woman named Angelina, the mother of the plaintiffs, and that Sukey was only about one year older than Simon Williams' oldest child, Sofia, by this marriage. Counsel for the defendants in error say that this evidence was sufficient to raise a presumption of an Indian custom marriage and a strong presumption of the legitimacy of the allottee, Sukey Williams, and that neither of these presumptions was overcome by any counteracting evidence. In support of this, they cite the following cases: Loomer v. Walker, 59 Okla. 44, 157 Pac. 1055; Blasdel v. Gower, 70 Oklahoma, 173 Pac. 644; Grisham v. Carroll & Co., 70 Oklahoma, 173 Pac. 448.

Having reached the conclusion that there is some evidence in the record supporting this proposition, let us now examine the other branch of this assignment of error in the light of the evidence hereinbefore summarized. Witness Minor Yahatubbi, after testifying that John Tussit and Malinda had been living together in her house a short time before Sukey's birth, was asked this question: "Where did John Tussit stay with Malinda?" To which the witness answered, "At my house." Thereupon the witness was asked the following question: "Did they sleep in the same room?" To which the witness answered, "We all live together in the same room." The following question was then asked the witness: "Did they sleep together, if you know?" This last question was objected to by counsel for the plaintiffs, on the ground that it was incompetent, irrelevant, and immaterial, and for the further reason it was an attempt to attack the legitimacy of a child who was shown to have been born of an Indian marriage. The court at first overruled this objection, to which ruling the plaintiffs excepted, but before any answer was given by the witness the court reversed the ruling, stating: "I believe I will have to sustain the objection, gentlemen"; to which latter ruling of the court the defendants excepted.

Another witness, Gibson James, was asked the following question: "Did you ever hear in those days, in the early days, that is, when Sukey was a girl, that Sukey was John Tussit's child?" This question was objected to by counsel for plaintiffs, and the objection was, by the court, sustained.

We think that this action of the court, in view of the unsatisfactory state of the evidence, was reversible error. The plaintiffs, as we have seen, seek to establish an Indian custom marriage between Simon and Malinda by showing marital cohabitation and reputation. It is well settled that marital cohabitation and reputation do not constitute marriage; that they are merely facts from which it may be presumed that the parties actually entered into a marriage when cohabitation commenced. 26 Cyc. 889. And it is equally well settled that—

"If during the cohabitation with one woman, the man cohabits also with another woman, no presumption of a marriage with either arises." 26 Cyc. 889.

The evidence excluded seems to us to have a strong bearing on the question of fact in issue; at least, it makes such a strong impression on our minds that we are unable to say after a careful examination of the entire record, that its exclusion did not result in a miscarriage of justice.

It was the contention of the defendants that Sukey Williams was the illegitimate child of Malinda Walton; that Sukey was for years, and until her death, and for many years subsequent to her death, looked upon and regarded by her relatives and neighbors as the illegitimate child of Malinda; that upon her death her estate passed without objection to her mother's heirs, who were entitled to inherit under section 2524 of Mansfield's Digest of the Statutes of Arkansas, which provides as follows:

"Illegitimate children shall be capable of inheriting and transmitting an inheritance, on the part of their mother, in like manner as if they had been legitimates of their mother."

The right of these heirs to inherit on the part of their mother seems to have been generally conceded from the death of Sukey Williams until the commencement of this action, some ten years after that event, during which time the plaintiffs in error, Horrigan and Allen, have been in undisputed possession under valid deeds from this line of heirs. In these circumstances there are no equities in favor of the plaintiffs, who have put off asserting their claim until this late day without showing any reason for such inaction.

While we believe that the plaintiffs have been guilty of laches and the statute of limitations pleaded is by its terms applicable to their case, there is some doubt in our minds as to whether laches or the statute may be pleaded against the plaintiffs on ac-

count of their Indian blood. See Patterson et al. v. Carter (Ward et al. v. Carter), 83 Okla. 70, 200 Pac. 855. As this phase of the question has not been noticed by counsel for either side, we refrain from passing upon the last assignment of error at this time.

For the reasons stated, the judgment of the district court is reversed, and the cause remanded for a new trial.

PITCHFORD, V. C. J., and JOHNSON, MILLER, and KENNAMER, JJ., concur.