On May 11, 1921, the plaintiff in error, O. O. Owens, as plaintiff, filed his application in the county court of Wagoner county for the determination, among other things, of the legal heirs of Will Jackson, deceased, pursuant to the provisions of an Act of Congress approved June 14, 1918.
Plaintiff in error, Owens, obtained a deed from Cornelius Boudinot and Melissa Perryman dated September 11, 1919, purporting to convey to him the inherited interest of the grantors in the allotment of Will Jackson, deceased, which deed was on that date approved by the county court of Wagoner county pursuant to the provisions of an Act of Congress approved May 27, 1908.
The procedure outlined in the act of the Legislature of 1919, being Senate Bill No. 60, was employed by petitioner in obtaining service of the order for hearing the petition upon the heirs of Will Jackson, pursuant to which a judgment was rendered on August 1, 1921, by the county court of Wagoner county, against the heirs of Will Jackson, both known and unknown, finding and concluding, among other things, that Cornelius Boudinot and Melissa Perryman were the sole heirs of the said Will Jackson, deceased, by whose deed of September 11, 1919, his allotment had been conveyed to the plaintiff in error.
The judgment of the county court was to the effect that the said Will Jackson was the allottee of the land in controversy; that Cornelius Boudinot and Melissa Perryman had conveyed the land to the plaintiff, O. O. Owens; that they were brother and half-sister of Will Jackson; were his sole heirs at law by whose deed of September 11th the allotment of Will Jackson had been conveyed to the plaintiff in error; that their deed conveyed good and complete title to the land in controversy to the plaintiff in error, Owens, and that the unknown heirs of Will Jackson, deceased, be forever barred and enjoined from claiming or asserting any interest, claim or estate to the said land adverse to the title of the plaintiff in error.
Thereafter, on the first day of February, 1922, Mattie Howard filed her petition in intervention in the county court of Wagoner county, asking that the default judgment of August 1, 1921, be set aside on the ground that the judgment had been rendered without notice or knowledge as to her, and claiming that she was a half-sister of Will Jackson and his sole and only heir, and as such entitled to inherit the property described in the original petition of the plaintiff in error. *Page 152 
The county court, after a retrial of the question as to whether such judgment should be set aside, refused to reopen the same, from which judgment Mattie Howard, who is the defendant in error, duly appealed to the district court of Wagoner county. Evidence was taken upon appeal in the district court, and on March 15, 1923, judgment was entered in favor of the plaintiff in error affirming the judgment of the county court. Thereafter motion for a new trial was filed by the defendant in error, and on the 23rd day of January, 1924, the district court on its own motion dismissed the cause for want of jurisdiction.
To obtain a reversal of the judgment of the district court dismissing the cause for want of jurisdiction, the plaintiff in error has duly appealed to this court. The sole question for determination is the correctness of the ruling of the trial court that it was without jurisdiction of this action. A determination of this question turns on whether a purchaser who has obtained deeds duly approved by the proper county court, pursuant to an Act of Congress approved May 27, 1908, from the full-blood heirs of a deceased full-blood Creek Indian, subsequent to the taking effect of the Act of Congress approved June 14, 1918, can maintain a proceeding under said act, having for its object the determination of the heirs of such deceased full-blood Indian. It is now settled in this state that so far as restricted Indians and their property are concerned, section 12, art. 7, of the Constitution of Oklahoma does not prohibit county courts in this state from exercising the authority conferred on said courts by the Act of Congress of June 14, 1918. State ex rel. Miller et al. v. Huser, 76 Okla. 131,184 P. 113.
The foundation for the rule, as we understand it, is that the Government of the United States has reserved to itself in the Enabling Act the right and authority to legislate respecting Indians residing in the territory of Oklahoma and the Indian Territory, and their property, and the people of the state of Oklahoma in their Constitution have expressly accepted this reservation in unequivocal language, Congress therefore possessed plenary authority to confer upon the county courts as federal agencies, jurisdiction to determine the heirs of deceased full-blood Indians, to which section 12, art. 7, of the state Constitution had no application, as a limitation or otherwise.
It is also well settled that the state of Oklahoma has not prohibited county courts from exercising the authority conferred on them by the heirship Act of Congress of June 14, 1918, but that in chapter 25, Session Laws of 1919, being Senate Bill No. 60, the Legislature has specifically sanctioned it (State ex rel. Miller et al. v. Huser, supra), and that in proceedings involving controversies between heirs, or those claiming to be heirs, arising under the Act of Congress of June 14, 1918, the procedural portions of said Senate Bill No. 60 are within constitutional limitations. Arnold v. Willis et al.,105 Okla. 172, 232 P. 15.
It is contended by the defendant in error, however, that the rules announced in cases cited above apply only in proceedings involving the rights of restricted heirs and those claiming to be restricted heirs, and that they have no application in proceedings where a purchaser from such restricted heirs is made a party and his rights sought to be adjudicated in the proceedings. The case of Homer v. Lester, 95 Okla. 284,219 P. 392, is cited and relied on by the defendant in error as authority for the proposition stated. An examination of the case of Homer v. Lester discloses that the defendants in that case were asserting title to the allotment there in question as purchasers from heirs in 1904, at a time when the land was unrestricted in the hands of the heirs, they having received the land in the right of a person who had died before receiving his allotment. The controversy involved in that case was between persons claiming to be heirs of Thomas J. Taylor, deceased, who had obtained a judgment in the county court determining them to be such heirs and purchasers from other persons claiming to be heirs in the year 1904, and this court held that the judgment of the county court, pursuant to the Act of Congress of June 14, 1918, determining the heirs of Thomas J. Taylor, was not conclusive upon the grantees purchasing from others claiming to be heirs in 1904.
That the court in the Homer-Lester Case did not question the authority of the county courts of this state as federal agencies under the Act of Congress of June 14, 1918, as sanctioned and supplemented by Senate Bill No. 60, to determine the heirship in a proper case, is made evident by the following language in the body of the opinion:
"We have no disposition to modify the holding in State ex rel. Miller v. Huser, supra, that 'Congress had authority to make the county officers federal agencies and administrative, as distinguished from courts exercising strictly judicial powers,' to determine conclusively heirship to restricted lands; that is, determine who are the restricted heirs of a deceased allottee. Congress not only has the power to constitute *Page 153 
the county courts its agents to determine heirship to restricted lands, but may, in its discretion, take away that authority from county courts and confer it upon the Secretary of the Interior, or the Superintendent of Indian Affairs, or any other officer of the United States."
It is also apparent to our minds, when the opinion in the Homer-Lester Case is considered in its entirety, that the court did not modify in any way the general doctrine announced in the Huser Case as it applied in proceedings where grantees purchasing from heirs subsequent to the taking effect of the Act of June 14, 1918, were parties.
The extent of the holding of this court in Homer v. Lester was that purchasers from restricted heirs, whose rights as such had attached prior to the taking effect of the Act of June 14, 1918, were within the protection of section 12, art. 7 of the state Constitution, and the county court had no jurisdiction to enter any judgment affecting their interest in lands so purchased by them. That this is true is evident from the following language appearing in the fourth paragraph of the syllabus in Homer v. Lester:
"The judgment of the county court (or the district court on appeal) in the proceedings authorized by the Act of Congress of June 14, 1918, is not binding on or res adjudicata as to any person claiming an interest in or title to the allotment acquired by a conveyance or deed or contract executed prior to the Act of June 14, 1918."
Continuing, the court said in the body of the opinion:
"The judgment of the county court 'shall be conclusive of said question,' meaning conclusive of the question as to who are restricted heirs as between persons claiming to be heirs, and their privies, and by privies we mean persons whose claim arises by purchase or otherwise after the act of Congress was passed, as later on explained herein."
In a subsequent portion of the opinion the court proceeds to define a person in privity with an heir to be not one who purchases from an heir after the proceeding of heirship had been instituted, but one who purchases from such restricted heir after the federal heirship act was passed. Continuing, the court said:
"We think any one purchasing from an alleged restricted heir after the Act of Congress of June 14, 1918, although no heirship proceedings are then pending, takes subject to the power of the county court to determine the heirship; that is to say, one purchasing from an alleged restricted heir after the federal heirship act will be treated as having agreed that the county court may conclusively determine the heirship, subject to appeal, and that he, as purchaser and therefore privy to the alleged heir, will be bound by the judgment of the county court. This is on the theory, using the language of the court in Northern Pacific Railway Co. v. Wall, 241 U.S. 87, that 'the laws in force at the time and place of the making of a contract, and which affect its validity, performance, and enforcement, enter into and form a part of it, as if they were expressly referred to or incorporated in its terms'."
The same distinction was observed in the subsequent case of Lynch v. Thompson, 108 Okla. 295, 238 P. 212, where this court used the following language in the syllabus:
"Where a purchaser acquires land from an heir of an allottee, and takes possession thereunder prior to the act of Congress relating to the determination of heirship, and the county court thereafter attempts by its decree to divest said purchaser from an interest in said lands, such decree is not conclusive as against the purchaser."
In the recent case of Owens v. Kitchens et al., 105 Okla. 88,232 P. 797, this court held as follows, citing and quoting from Homer v. Lester the identical words quoted above and basing its holding thereon:
"* * * One purchasing from an alleged restricted heir after the federal heirship act will be treated as having agreed that the county court may conclusively determine the heirship, subject to appeal. * * *"
In the Kitchens Case one claiming to be an heir filed his petition in the county court to determine heirship under the Act of June 14, 1918. A purchaser, purchasing subsequent to June 14, 1918, objected to the jurisdiction of the county court to determine the matters in issue on the ground that he had begun another proceeding in the district court of another county to quiet his title, and that that court was the only court that had any jurisdiction to render a binding judgment as to him. On appeal to this court that contention was denied, the Supreme Court holding that the defendant having purchased from an alleged restricted heir after the act of June 14, 1918, would be treated as having agreed that the county court may conclusively determine the heirship subject to appeal.
This court in the Kitchens Case also announced its adherence to the doctrine laid down in State ex rel. Miller v. Huser, supra, in the following language:
"The plenary authority of Congress to legislate for full-blood members of the Five Civilized Tribes concerning their restricted lands cannot be limited or impaired by the Constitution or laws of the state, and section 12, art. 7, of the state Constitution does not prohibit the county courts from exercising *Page 154 
the authority conferred on said courts by the Act of Congress June 14, 1918 (U.S. Comp. St. 1918, secs. 4234a, 4234b, Appen.)"
We think the heirship Act of Congress of 1918, was a remedial act, and should receive a liberal construction to promote and carry out the purpose of Congress, which was, as we understand it, to facilitate the determination of disputed questions of heirship by agencies created by the federal government itself, to the end that restricted Indians might more readily come into the possession and enjoyment of their inherited lands or their tribal funds. The history and purpose of this legislation is ably discussed in State ex rel. Miller v. Huser, supra.
This act, we think, should be construed in connection with other acts of Congress, seeking to carry out the same general purpose. In this connection it is well to remember that Congress, by the Act of May 27, 1908, made the county courts of this state federal agencies to approve and confirm deeds by which restricted heirs attempt to convey their inherited lands. Courts have generally recognized that the application for the approval of such deeds may be made by the purchaser. To hold that only restricted heirs can maintain a proceeding to determine heirship under the federal heirship act, and to say that only such heirs or those claiming to be heirs can be brought in before the court in such proceeding, would, in our judgment, to a great extent defeat the purpose of the act.
Those seeking the investment of money in the title to the inherited lands of restricted Indian heirs would not be eager to pay the fair value of such land, if it were known in advance that they might not have recourse to some tribunal where the conflicting claims of the various heirs, both known and unknown, could be settled and determined for all time. If the duty of instituting and prosecuting legal proceedings for the determination of such heirs were imposed upon the restricted heir alone, in view of the well-known aversion of such Indians to the institution of court proceedings, the judicial determination of disputed questions of heirship affecting the title to his inherited and would never be determined and the result would be that such Indian would, in many instances, be denied the substantial use and enjoyment of his land. Such could not have been the result intended by Congress in the enactment of this statute. The better rule, and one which seems to us to be clearly deducible from all of the authorities, including Homer v. Lester, is that the county court under the federal heirship Act of June 14, 1918, as sanctioned and supplemented by Senate Bill No. 60, has jurisdiction to determine heirship as between restricted heirs and their grantees purchasing from said heirs subsequent to the taking effect of the Act of June 14, 1918.
The plaintiff in error, having purchased the land in controversy subsequent to the Act of June 14, 1918, was in privity with the restricted heirs from whom he bought the land, to the same extent as if he had purchased the land after the institution of the heirship proceeding by such heirs, and hence could be brought into the county court on petition of an heir, and the county court acquired full and complete jurisdiction to determine the heirship as between him and such restricted heir, or he could himself invoke the jurisdiction of the county court upon his own petition and obtain a valid judgment.
The argument is advanced that the trial court was without jurisdiction because the record fails to show that notice was actually served on the United States Probate Attorney. It is insisted that rule 19 of the Supreme Court of the state of Oklahoma, which became effective December 20, 1918. required that in proceedings for a determination of heirship under the Act of Congress approved June 14, 1918, notice should be given to the local probate attorney for the United States, and that the record fails to show that such notice had been given. It must be remembered that the Act of June 14, 1918, prescribed no method for obtaining personal service in proceedings authorized under said act.
Senate Bill No. 60, being chapter 25, page 41, of Session Laws of 1919, became effective June 28, 1919. We do not doubt the authority of the Supreme Court to prescribe rules of procedure to be observed by the county court in proceedings for determination of heirship under the Act of Congress June 14, 1918, in addition to statutory provisions governing such procedure, but when the Legislature took the field and enacted a procedural statute, as it did by Senate Bill No. 60, which became effective April 4, 1919, setting out in detail the kind and manner of service both personal and by publication, and the Supreme Court does not thereafter modify the rules prescribed by such statute, the procedural portions of such statute must be enforced as having superseded rule 19 of the Supreme Court, and when complied with fully sustains the jurisdiction of the court.
Mention has already been made of the fact that the procedural portions of Senate Bill *Page 155 
No. 60 have been expressly sustained by this court as being within constitutional limitations. Arnold v. Willis, supra.
We cannot agree with the argument of counsel for defendant in error that the primary purpose of plaintiff in error's action in the county court was to quiet his title and determine the ownership of the allotment of Will Jackson. It is true that plaintiff in error's petition in the county court contained a request that his title to the land might be declared valid and perfect as against the heirs both known and unknown of Will Jackson, in addition to a prayer for the determination of the heirship, and while it is true that the county court, in addition to determining who were the heirs, also determined the title and ownership of the plaintiff in error in and to said allotment as against the heirs of Will Jackson, both known and unknown, this would not have the effect of ousting the county court of jurisdiction to render a valid decree determining as a matter of fact, the heirs of Will Jackson.
The rule applicable to this situation is stated in Arnold v. Willis et al., 105 Okla. 172, 232 P. 15, as follows:
"By Act of Congress of June 14, 1918, county courts of the state were empowered to determine the heirs of deceased restricted Indians under the procedure and within the limits of jurisdiction fixed by the Constitution and laws of the state, and in such proceeding a decree determining heirs is supported by indubitable jurisdiction. If, in addition to determining who are the heirs, the court also determines that one of the claimants is not an heir and has no interest in the estate, this portion of the decree, if erroneous as being in excess of jurisdiction, is separable and distinct from the determination of who are the heirs and may be disregarded without impairing the decree determining heirship."
In the body of the opinion this court quoted with approval this statement from Roth et al. v. Union National Bank of Bartlesville, 58 Okla. 604, 160 P. 505, as follows:
"If a judgment or decree includes a decision of an independent and separable subject-matter or question within, and an independent and separable subject-matter or question beyond, its jurisdiction, the same is valid as to the former and a mere nullity as to the latter, and is not void in toto."
The trial court made findings of fact, as did the county court, to the effect that Cornelius Boudinot and Melissa Perryman were the sole heirs at law of Will Jackson, deceased, but notwithstanding such findings of fact it entered judgment dismissing the cause for want of jurisdiction. Upon a survey of the entire record we conclude that in thus dismissing the cause for want of jurisdiction the district court erred, and the case is therefore remanded to the district court of Wagoner county, with instructions to set aside its order dismissing the cause and to proceed in accordance with the views herein expressed.
By the Court: It is so ordered.