**PHELAN et al. v. ROBERTS et al.**

No. 26892. March 1, 1938.

Robert J. Keevan, I. L. Harris, Ted R. Elliott, and Harper & Lee, for plaintiffs in error.

Twyford & Smith and William J. Crowe, for defendants in error.

DAVISON, J. This is an action in ejectment and to quiet title, brought by the heirs of F. M. Whiteside, deceased. It involves lots 19 and 20 in block 6, Walnut Grove addition to Oklahoma City, owned by the deceased at the time of her death. The action was brought November 23, 1932.

On application, R. A. Mooneyham, public administrator of Jasper county, Mo., who had been appointed administrator de bonis non in the estate of the deceased, was allowed to intervene, and he adopted the pleadings of the plaintiffs herein.

The defendants filed their separate answers and cross-petitions setting up their various rights and defenses. The court rendered judgment for the plaintiffs. The defendants appealed.

The record shows that the lots in controversy were purchased in 1907 by Mrs. F. M. Whiteside of Joplin, Mo., who died in 1918. leaving her sisters and brothers and children of deceased brothers, plaintiffs

herein, all of whom were nonresidents of Missouri and Oklahoma. The F. M. Whiteside estate was probated in Jasper county, Mo. These lots were not discovered and included in the inventory of this estate until 1934. No taxes were paid on these lots since 1918. These lots were sold in 1924 at resale for taxes due and were bid in by, and a resale tax deed issued to, John T. Phelan. Thereafter, a correction resale tax deed was issued to said Phelan by the county treasurer.

Upon the purchase of the land at resale, it is alleged that John T. Phelan went into possession and continued in possession until 1929, when he conveyed same to Annie G. Mahoney, who executed an oil and gas lease covering said lots to T. B. Slick in 1930. Annie G. Mahoney conveyed the lots, subject to the oil and gas lease, to Margaret Phelan, one of the defendants herein. Margaret Phelan then conveyed the royalty or mineral rights under the lots to L. S. Randolph, and other defendants herein became owners of various interests in such mineral rights by purchase.

This court in Mahoney v. Estep, 171 Okla. 101, 38 P.2d 537; Mahoney v. Weitelman, 174 Okla. 591, 50 P.2d 1094; and Price v. Mahoney, 175 Okla. 355, 53 P.2d 257, held that the identical resale tax deed here considered is void.

The defendants present their several assignments of error under the single proposition that the plaintiffs' cause of action was barred by laches. It is contended that, regardless of the statute of limitations, the owner of land sold for taxes will be denied relief against the sale where he has delayed for an unreasonable length of time to seek redress; and more specifically where the property has in the meanwhile been greatly enhanced in value by the labor or expenditure of the tax purchaser, or where it has passed into the hands of an innocent purchaser in good faith. It is insisted that both of these conditions are present in the instant case and many authorities showing conditions under which the doctrine of laches may be invoked are presented for our consideration.

As a general proposition, we will say that laches is invoked as against an equitable title to real estate rather than as against a legal title. The person or persons who invoke such defense must have suffered some irreparable damage or loss because of a change of conditions in relying on the inaction and indifference of the other party. Furthermore, such other party must have been aware of the conditions and of the reliance on his inaction and anticipated the result.

It is not disputed that no interest or ownership in the property in controversy was exercised by the plaintiffs from the year 1918 until near the time of filing their suit in 1932.

The defendants, by their several answers filed herein, have pleaded the resale tax deed, the source of their title, the failure to pay taxes on part of the plaintiffs, the continued actual, peaceful, and undisturbed possession of John T. Phelan and his grantees since obtaining the resale tax deed, the plaintiffs' laches and failure to assert any claims in or to said land until the same became valuable for oil and gas production and until the rights of the defendants and other innocent purchasers for value without notice had intervened. The resale tax deed and the correction deed were abandoned as a defense herein.

These answers, however, do not allege any change in the conditions of these defendants which is due to any act on part of plaintiffs or any of them. Neither do the defendants allege that the plaintiffs had knowingly, intentionally, or indifferently allowed the defendants to spend money on the land or make improvements thereon.

The plaintiffs have conclusively established the fact that the owner of the land, F. M. Whiteside, paid all taxes due on the land during her lifetime. The administration of her estate being in Missouri, the ownership of this land was not discovered until the third administrator was appointed in March, 1934. The appraisers for the estate had discovered and listed as an asset a "contract for lots 19 and 20, block 6, Walnut Grove, Journalist Cove addition, Oklahoma City, Oklahoma," and on which they placed no value. The deceased left neither husband nor children and none of her collateral heirs lived either in Missouri or Oklahoma. None of the heirs ever became familiar with the probate records of Jasper county, Mo., in so far as the evidence shows. If these heirs had had sufficient information to justify them to investigate the records in the office of the county clerk of Oklahoma county, they would have found two deeds to the land dated September and December, 1929, purporting to have been executed by F. M. Whiteside and would have necessarily concluded that the land had been sold by the actual owner of the same, notwithstanding the fact that these deeds have been held to be forgeries.

Under the facts here presented, can it be

successfully contended that, owing to the conduct and laches of the heirs of F. M. Whiteside, during these years, such staleness of demand on their part should constitute a defense to their enforcement of the legal rights for which they now contend? We cannot agree that the want of knowledge of the ownership of the land in controversy was due to any culpable negligence on part of the plaintiffs. The following rule is laid down in 21 C. J., p. 237, sec. 230:

"Lapse of time will not bar relief where circumstances exist which excuse the delay and render it inequitable to interpose the bar. There is no absolute rule as to what constitutes an excuse for an apparently unreasonable delay. It depends on the circumstances of the particular case and rests in the sound discretion of the Chancellor, and the conclusion reached by him will not ordinarily be disturbed on appeal. * * *"

In Nickel v. Janda, 115 Okla. 207, 242 P. 264, cited by the defendants in support of their contention, this court held:

"No arbitrary rule exists for determining when a demand becomes stale, or what delay may be excused, and the question of laches and equitable estoppel is to be decided upon the particular circumstances of each case. In equity, a complainant must have been diligent in seeking his remedy and must not have slept upon his rights, and if, with knowledge of the facts which give him a right to seek rescission, he has been guilty of an unreasonable and unnecessary delay in availing himself of his remedy, a court of equity will deny him relief."

The right to apply the rule of laches is based upon knowledge of the parties against whom it is to be invoked. The various authorities cited by defendants support that theory. The rule governing in such cases is expressed in 21 C. J. p. 244, sec. 242, in the following language:

"As a general rule, laches cannot be imputed to one who has been justifiably ignorant of the facts creating his right or cause of action, and who therefore has failed to assert it, or as the rule is sometimes expressed, it is an essential element of laches that the party charged with it should have knowledge or the means of knowledge of the facts creating his right or cause of action."

This rule has been approved in Standard Oil Co. of Colorado v. Standard Oil Co., 72 Fed.2d 524 (C. C. A. 10th Cir.); Granger Farwell v. Pyle National Electric Headlight Co., 289 Ill. 157, 124 N. E. 449; Roten v. Tesdell & Mackaman, 195 Iowa, 1329, 192 N. W. 442; Merrill Trust Co. v. Hartford, 104 Me. 566, 72 Atl. 745; Nickel v. Janda, supra.

On this subject, reading from Pomeroy's Equity Jurisprudence (4th Ed.) vol. 4, sec. 1447, we quote:

"A person cannot be deprived of his remedy in equity on the ground of laches, unless it appears that he had knowledge of his rights, as one cannot acquiesce in the performance of an act of which he is ignorant, so one cannot be said to neglect the prosecution of a remedy when he has no knowledge that his rights have been invaded, excepting, always, that his want of knowledge is not the result of his own culpable negligence."

In the instant case, the plaintiffs, by ejectment and to quiet title, are seeking to perfect a legal title. They are undisputed heirs of F. M. Whiteside, deceased. They are not attempting to rely upon any equitable rule to establish their title but to quiet same. Their title has already been established by inheritance, and the question here presented is whether or not they lost their legal right to assert their title, and courts are seldom, if ever, justified in invoking equitable maxims to destroy legal rights where there is applicable statutes of limitation governing the legal rights. In York v. Trigg, 87 Okla. 214, 209 P. 417, this court held:

"Where the rights of parties to an action are clearly defined and established by law, equity has no power to change or unsettle such rights. The maxims of equity may be invoked to protect an existing right, but are unavailable to create a right where none exists. Equity follows the law."

To the same effect is the holding of this court in Plains Petroleum Corporation v. Fine, 174 Okla. 570, 51 P.2d 284.

This rule is supported by the various courts as found in Bell v. Ham (Mo. App.) 173 S. W. 744; Higgins Oil & Fuel Co. v. Snow, 113 Fed. 433, 51 C. C. A. 267; Barnesville v. Stafford (Ga.) 131 S. E. 487, 43 A. L. R. 1045. In the last case cited, that court said:

"The doctrine of stale demands is a purely equitable one, and arises only whenever, from the lapse of time and laches of the plaintiff, it would be inequitable to allow a party to enforce his legal rights. * * * Stanley v. Reeves. 149 Ga. 151, 154, 99 S. E. 376. Equity follows the law, and will never close her doors against the true owner of land seeking to recover the same, when the complaint is made within a less time than that in which prescription could have ripened, and where no special circumstances appear demanding an earlier application."

The plaintiffs contend that the defense of laches is not available under a tax deed

shown and held to be void on its face. While it is true that the courts have said that under certain conditions the defense of laches may be available to a tax deed holder where the deed is defective, there appears to be few instances where this rule has been extended to those who hold under a void tax deed.

The defendants have cited the case of Nohl v. Holloway, 179 Okla. 512, 66 P.2d 497, wherein this court held that laches would support a tax deed under the conditions presented in that case, whether the deed was voidable or void, and the defendants contend that the facts in the instant case are almost identical. We cannot agree with this contention.

From a careful review of the Nohl-Holloway Case, we find that the owner of the land had obtained a deed to the land in controversy and did not place it of record for 22 years, and never paid any taxes on same. About ten years after the land was purchased it was sold for taxes and the tax deed promptly placed of record and all of the back taxes were paid. The tax deed purchaser then sold the land and the new purchaser placed valuable and lasting improvements thereon. More than twelve years after the tax deed was placed of record and after the land had become valuable for oil, and after the developments for oil had greatly reduced the value of the improvements placed on the land, the former owner conveyed to a third party the mineral rights only. Action was then commenced by the owner of the mineral rights to quiet title to the mineral rights only, and his grantor intervened in support of plaintiff's title to the mineral rights. In that case, the owner of the land under the tax deed would have been deprived of all of the oil royalties, holding only the surface right with greatly reduced value of improvements and with no rights under the occupying claimant's law. This court held that the doctrine of laches would be sustained without regard to whether the tax deed be valid, voidable, or void on its face.

In the instant case, as has herein been disclosed, the land was purchased in 1907 and the deed placed of record. The taxes were paid until 1918, when the owner died. The property had no residential value and no improvements were placed on the property. The owner lived in Missouri and the heirs were nonresidents of Missouri and Oklahoma and had no knowledge or means of knowledge of their rights until near the time of filing the suit to recover. The suit is not a suit in equity, but a suit at law and

equity. There was no laches on part of the plaintiffs in the instant suit. The purchaser at tax sale as well as subsequent purchasers of the property lived in Oklahoma City, where the identical tax deed had several times been declared to be void both in the district and Supreme Court.

In the Nohl-Holloway Case, laches was applied upon the theory that the plaintiff and his grantor had knowledge of their rights and had ample opportunity to enforce them and upon the further fact of change of condition or relation during the period of delay which would result in irreparable loss. No such facts are shown in the instant case, and the cases are easily distinguished.

The judgment of the trial court is correct, and the same is affirmed.

OSBORN, C. J., and PHELPS, CORN, and GIBSON, JJ., concur.