**LAWSON et al. v. HAYNES.**

No. 3665.

United States Court of Appeals
Tenth Circuit.

Nov. 15, 1948.

Roy F. Ford, of Oklahoma City, Okl. (Leo J. Williams and Charles D. Crandall of Williams, Ford & Crandall, both of Oklahoma City, Okl., on the brief), for appellants.

Jim Gowdy, of Lindsay, Okl. (O. B. Moody, of Lindsay, Okl., on the brief), for appellee.

Before PHILLIPS, Chief Judge, and BRATTON and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Appellants, husband and wife, brought this suit in equity against the appellee to cancel a mineral deed to 20 acres of oil royalty in McClain County, Oklahoma, and for an accounting of the rents and profits derived therefrom. Jurisdiction is based

upon diversity of citizenship and requisite amount in controversy, and the suit is grounded upon the alleged breach of a confidential relationship which, it is contended, voided the transaction. At the conclusion of the plaintiffs' case, the court sustained a motion to dismiss, and entered judgment for the defendant on the grounds that the evidence failed to show an actionable confidential relationship, and if so, the resulting cause of action was barred by the statute of limitations.

In support of the allegations in the complaint, the appellants developed substantially the following facts. They were uneducated farmers living near Lindsay, Oklahoma, on the wife's Indian allotment, on which there was a mortgage of about $2,800.00. The husband could read and write very little. The wife was a Chickasaw Indian of three-eights blood. She reached the eighth grade, but had no business experience. Some time in April 1930, a man named Wood approached the appellants to purchase part of the royalty under the Indian allotment of 210 acres. This resulted in an agreement to purchase 45 acres of royalty for $2,850.00, an amount sufficient to retire the mortgage. The agreement was executed and Wood later had it acknowledged and placed of record.

The appellee was cashier of the Exchange Bank of Lindsay, where the appellants had done business for many years. Later in 1930, the banker contacted the appellant husband, telling him that this instrument was of record against his land, and that it constituted a cloud on his title which prevented him from receiving his oil and gas lease rentals, or from selling or leasing, or otherwise disposing of it. He told him that he could get this instrument released of record for 10 acres of his royalty, and that he would have to give Wood a part of it. After talking it over, appellants decided that they should follow appellee's advice, and when the husband called at the Bank to tell him of their decision, appellee informed them that it would take more royalty than he thought, and that he had accordingly drawn up a deed for 20 acres of royalty instead of 10 acres. After some hesitation, appellants executed the deed to

the 20 acres of royalty in the early part of 1931, and it was placed of record.

Soon thereafter, and on January 28, 1931, the appellee caused to be filed a suit to quiet title against Wood, but no service of summons was had, nor did the appellants have any knowledge that the suit was filed in their names, or for that matter that a suit was ever filed. On the same date that the suit was filed, Wood executed and delivered to the Collection Department of the American National Bank at Lindsay, of which appellee was cashier, a quit claim deed to the appellants, with a sight draft in the amount of $35.53, which the appellee paid, and he filed the deed of record. Appellee admits that he gave Wood no royalty for the quit claim deed, and there is no evidence that he gave him any consideration other than $35.53.

The appellants knew nothing of these transactions, but continued to receive their lease rentals until the early part of 1947, when appellant was talking to a lawyer in Oklahoma City concerning the amount of royalty he owned under the land, and what disposition he had made of it. This led to an investigation and the filing of this suit.

A confidential relationship is never presumed, and the burden of proving it is upon the party asserting it. Furrow v. First National Bank, 133 Okl. 137, 271 P. 632. Once, however, it is established between parties to a transaction, and the party in whom the confidence is reposed obtains an apparent advantage over the other, the transaction is presumed to be void, and the burden is upon the person in the position of confidence to show by clear proof that he took no advantage of his influence, and that the transaction was fair and conscientious. Mattingly v. Sisler, 198 Okl. 107, 175 P.2d 796; Owens v. Musselman, 190 Okl. 199, 121 P.2d 998; Fipps v. Stidham, 174 Okl. 473, 50 P.2d 680; Lewis v. Schafer, 163 Okl. 94, 20 P.2d 1048; McDaniel v. Schroeder, 128 Okl. 91, 261 P. 224; Weitz v. Moulden, 109 Okl. 119, 234 P. 583; Derdyn v. Low, 94 Okl. 41, 220 P. 945; 2 Pomeroy on Equity, 4th Ed., Sec. 948. Cf. Thomas v. Wilson, Okl.Sup., 185 P.2d 473.

▆ Where a party obtains the legal title to property through the violation of confidence or fiducial relations, or any other unconscientious manner, equity will impress a constructive trust upon it in favor of the one who is in good conscious entitled to it. Lewis v. Schafer, supra; Hayden v. Dannenberg, 42 Okl. 776, 143 P. 859, Ann. Cas.1916D, 1191.

The undisputed evidence shows that the appellee was a small town banker—the appellants were ignorant farmers, and it is clear that they looked upon the banker as their personal and business advisor. He undoubtedly exerted very great influence over their business affairs—he admitted that they trusted him. Upon his solicitation, he undertook to represent them in business matters about which they were ignorant, and about which he claimed to be informed. He therefore assumed to act in their behalf in a confidential capacity, and he was bound to act in the utmost good faith for their benefit. Fipps v. Stidham, supra. According to the undisputed proof, he misrepresented the law and the facts—in short, he took advantage of them to his benefit and their detriment. He first told them that it would take 10 acres of the royalty to secure the release of the instrument, and later he told them that it would take 20 acres. He led them to believe that Wood was demanding a part of the royalty as consideration for the release of the instrument, when in truth, he never had any thought or intention of giving him any part of it. He undertook to represent them in a fiducial capacity, and he owed them the duty to be scrupulously truthful. Under the undisputed proof, he was not truthful, and therefore could not have been honest and conscientious.

▆ The more troublesome question is whether the appellants' cause of action is barred by laches. This being an equitable action, the statutes of limitation have application only by analogy. Pepper v. Truitt, 10 Cir., 158 F.2d 246; Shell v. Strong, 10 Cir., 151 F.2d 909; Hoehn v. Crews, 10 Cir., 144 F.2d 665, 670; Holmberg v. Arnbrecht, 327 U.S. 392, 66 S.Ct. 582, 90 L. Ed. 743, 162 A.L.R. 719. The fifteen year statute of limitations is not analogous. 12 O.S.1941, § 93. See Pepper v. Truitt, supra. Sixteen years lapsed between the accrual of the cause of action and the filing of the suit, but lapse of time alone does not bar relief where it has not worked injury, prejudice or disadvantage to the defendant or other interested parties. Phelan v. Roberts, 182 Okl. 202, 77 P.2d 9; Harrison v. Eaves, 191 Okl. 453, 130 P.2d 841; O'Neal v. Vose, 193 Okl. 451, 145 P.2d 411; Stallings v. White, 194 Okl. 649, 153 P.2d 813; Shell v. Strong, supra. It is the general rule, followed in Oklahoma, that where a plaintiff has been injured by fraud, and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the person committing the fraud to conceal it from the knowledge of the other party. Phelan v. Roberts, supra; Holmberg v. Arnbrecht, supra; Bailey v. Glover, 21 Wall. 342, 348, 22 L.Ed. 636.; 4 Pomeroy on Equity, 4th Ed., Sec. 1447. "Laches will not be imputed to one who has been justifiably ignorant of the facts creating his right or cause of action, and who, therefore, has failed to assert it." Alexander v. Phillips Petroleum Co., 10 Cir., 130 F.2d 593, 606. A substantial increase in the value of the property involved, where the right could have been asserted before such increase, and the granting of relief would work an inequity, is a circumstance which can be considered in applying the doctrine of laches. Alexander v. Phillips Petroleum Co., supra.

▆ In our case, the appellants were ignorant of the facts and of their legal rights until they learned of them through the advice of counsel in 1947. Until that time, they had no occasion to investigate, were not put upon notice, and they therefore cannot be chargeable with inexcusable neglect in the assertion of their rights. On this record, we are convinced that a confidential relationship was established, that the appellee took advantage of his influence to the detriment of the appellants, and they therefore have a cause of action which is not barred by the statute of limitations. The cause is accordingly reversed and remanded.