**Anita CLARK, Executrix of the Estate of Mattie Osborn, Deceased, et al., Appellees,**

v.

**The UNKNOWN HEIRS, EXECUTORS, ADMINISTRATORS, DEVISEES, TRUSTEES AND ASSIGNS, IMMEDIATE AND REMOTE OF James Merchie OSBORN, Deceased; et al. Appellants.**

No. 68438.

Supreme Court of Oklahoma.

Oct. 31, 1989.

Rehearing Denied Dec. 12, 1989.

Danny R. Beltz, Stroud, for appellee, Anita Clark.

Leonard I, Pataki, Carol R. Goforth, Charles Greenough, Doerner, Stuart, Saunders, Daniel & Anderson, Tulsa, for appellee, Bigheart Pipeline Corp.

Michael P. Warwick, Shawnee, for appellee, Spicer Oil Co.

Richard James, James & Gilmore, Stroud, for appellants, unknown heirs.

ALMA WILSON, Justice.

The issue is whether laches bars the collateral heirs of James Osborn from recovering oil and gas proceeds wrongfully paid to James' widow, Mattie, during her lifetime. We hold that under the facts hereinafter set forth the equitable doctrine of laches does not bar collateral heirs from recovering from the Estate of Mattie.

James Osborn died intestate and without issue in 1974 in his domicillary state, Colorado. At the time of his death James was the sole owner, by virtue of inheritance, of oil and gas interests situated in Lincoln County, Oklahoma. Bigheart Pipe Line was purchasing production of the leased minerals at the time of James' death. Subsequent to James' death and pursuant to Colorado Small Estate Proceeding[1] Mattie submitted to Bigheart an Affidavit for Collection of Personal Property. Mattie's at-

---

1. Colo.Rev.Stat. 15–12–1201 and 15–12–1202 provide:

**15–12–1201. Collection of personal property by affidavit.** (1) At any time ten or more days after the date of death of a decedent, any person indebted to the decedent or having possession of tangible personal property or an instrument evidencing a debt, obligation, stock, chose in action, or stock brand belonging to the decedent shall make payment of the indebtedness or deliver the tangible personal property or an instrument evidencing a debt, obligation, stock, chose in action, or stock brand to a person claiming to be the successor of the decedent upon being presented an affidavit made by or on behalf of the successor stating that:

(a) The fair market value of property owned by the decedent and subject to disposition by will or intestate succession at the time of his death, wherever that property is located, less liens and encumbrances, does not exceed twenty thousand dollars;

(b) At least ten days have elapsed since the death of the decedent;

(c) No application or petition for the appointment of a personal representative is pending or has been granted in any jurisdiction; and

(d) Each claiming successor is entitled to payment or delivery of the property in the respective proportion set forth in such affidavit.

(2) A transfer agent of any security shall change the registered ownership on the books of a corporation from the decedent to the successor or successors upon the presentation of an affidavit as provided in subsection (1) of this section.

(3) The public official having cognizance over the registered title of any personal property of the decedent shall change the registered ownership from the decedent to the successor or successors upon the presentation of an affidavit as provided in subsection (1) of this section.

**15–12–1202. Effect of affidavit.** The person paying, delivering, transferring, or issuing personal property or the evidence thereof pursuant to affidavit is discharged and released to the same extent as if he dealt with a personal representative of the decedent. He is not required to see to the application of the personal property or evidence thereof or to inquire into the truth of any statement in the affidavit. If any person to whom an affidavit is delivered refuses to pay, deliver, transfer, or issue any personal property or evidence thereof, it may be recovered or its payment, delivery, transfer, or issuance compelled upon proofs of their right in a proceeding brought for the purpose by or on behalf of the persons entitled thereto. Any person to whom payment, delivery, transfer, or issuance is made is answerable and accountable therefor to any personal representative of the estate or to any other person having a superior right.

torney also submitted to Bigheart a Proof of Death and Heirship wherein it was misrepresented that all of James' property was held in joint tenancy. Thirdly, Mattie submitted to Bigheart a signed division order wherein she "guarantees that she is the sole and only heir at law of James." Relying on said documents, Bigheart commenced paying the proceeds to Mattie. In 1985 Mattie died testate and her personal representative brought suit in Lincoln County, Oklahoma to quiet title and determine the heirs of James. The collateral heirs of James answered, cross petitioned and named Bigheart as a third party defendant. The collateral heirs sought a determination of the heirs of James and an accounting from Bigheart, other purchasers of oil and gas, and Mattie's estate. Mattie's estate, Bigheart and purchasers defended on the grounds of laches.

No Oklahoma ancillary decree has ever been entered judicially determining title to the mineral interests. The parties do not dispute that pursuant to 84 O.S. § 213, one half of James' mineral interest vested with his widow Mattie and one half with his collateral heirs at the time of his death. This dispute involves proceeds, not title. Based upon the equitable doctrine of laches the trial court held that the collateral heirs were entitled only to their proportionate share of the royalties accruing after the death of Mattie and the Court of Appeals affirmed.

■ The Estate of Mattie may not avail itself to the equitable defense of laches because the evidence fails to prove the elements of laches and the clean hands doctrine applies. The party invoking the defense of laches must prove that it suffered some irreparable damage or loss because of a change of conditions in relying on the inaction and indifference of the other party. Furthermore the other party must have been aware of the conditions and of the reliance on his inaction and anticipated result. *Phelan v. Roberts,* 182 Okl. 202, 77 P.2d 9, 10 (1938). "As a general rule laches cannot be imputed to one who has been justifiably ignorant of the facts creating his right or cause of action, and who therefore failed to assert it." *Id.* 77 P.2d at 11.

■ The record reveals that one collateral heir, Mrs. Compton, was called as the sole witness at the trial court hearing. Mrs. Compton testified that she was a niece of James and that her mother (James' sister) predeceased James by a matter of days. In fact, only a couple of a host of immediate collateral heirs were living at the time of James' death. Mrs. Compton testified that she lived in Texas and was aware that her mother, aunts and uncles had inherited minerals in Lincoln County from her grandfather. However, Mrs. Compton testified that she knew nothing of her uncle's business or probate estate. There was neither a showing of inequitable, illegal or misleading conduct on the part of the collateral heirs nor a showing of knowledge of their rights. Assuming without deciding that the evidence proved knowledge on the part of Mrs. Compton, that knowledge cannot be imputed to the other collateral heirs. The elements of laches are not met when there is an absence of knowledge and affirmative acts to mislead. *Sautbine v. Keller,* 423 P.2d 447 (Okla.1966). As noted earlier, it was Mattie who misrepresented the ownership of the minerals. Even if this Court were to gleen facts most favorably toward application of laches, equity cannot be invoked when its aid becomes necessary through a party's own fault and hence cannot assist parties to escape from circumstances created by fault of their privies. *Sautbine* at 451. The clean hands doctrine applies here. We therefore reverse and hold that the collateral heirs are entitled to an accounting from Mattie's estate if timely brought. The collateral heirs may only recover from that period not barred by the Statute of Limitations.

■ We next address whether the trial court erred in disallowing an accounting from Bigheart and other purchasers. In light of the Colorado Small Estate Proceeding [2] Bigheart and other purchasers cannot be held liable for double payment and we

2. *See* FN 1.

therefore affirm the holding that the collateral heirs are not entitled to an accounting from Bigheart.

AFFIRMED IN PART AND REVERSED IN PART.

HARGRAVE, C.J., OPALA, V.C.J., and LAVENDER, KAUGER and SUMMERS, JJ., concur.

HODGES, SIMMS and DOOLIN, JJ., dissent.

SIMMS, Justice, concurring in part, dissenting in part:

I must respectfully dissent in part from the majority's opinion as I believe that portion of trial court's decision pertaining to Mattie's estate exceeded its jurisdictional power in this matter. This was a proceeding for determination of heirship under 84 O.S.1981, § 251, et seq. It is not an ordinary civil action, but a special proceeding limited to the determination of who are the heirs of the deceased.[1] The deceased in this case was James Merchie Osborn and the determination of *his* heirs was the only issue properly before the trial court—and consequently this Court. I would affirm those rulings.

The claims against *Mattie's* estate, however, were outside the trial court's limited jurisdiction in this proceeding and the rulings thereon should be vacated. Those matters should be determined in another action which is appropriate to those issues.

Additionally, while I do not agree that it is even properly before us, I feel compelled to take issue with the majority's treatment of the questions raised regarding laches and the statute of limitations. Unlike the majority, I believe the statute of limitations barred the collateral heirs entirely. Also, I believe that the trial court's finding that the claim was barred by laches is support-

able and not against the clear weight of the evidence. See, *Horrigan v. Gibson*, 87 Okl. 1, 206 P. 219 (1922).

I am authorized to state that Justice DOOLIN joins with me in the views expressed herein.

---

1. See, *Homer v. Lester*, 95 Okl. 284, 219 P. 392 (1923); *In re Jackson's Estate*, 117 Okl. 151, 245 P. 874 (1926); *Anderson v. Peck*, D.C.Okl., 53 F.2d 257; *In re Radovich's Estate*, 48 Cal.2d 116, 308 P.2d 14 (1957). See also, *State, ex rel., Blackhawk v. District Court of Osage County*, 190 Okl. 659, 126 P.2d 255 (1942).